Jeffrey N. Pomerantz (CA Bar No. 143717)
Debra I. Grassgreen (CA Bar No. 169978)
John W. Lucas (CA Bar No. 271038)
Malhar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415.263.7000
Facsimile: 415.263.7010
Email: jpomerantz@pszjlaw.com
        dgrassgreen@pszjlaw.com
        jlucas@pszjlaw.com
        mpagay@pszjlaw.com

Proposed Attorneys for Debtors

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No.: 16-30296-DM |
| BLUE EARTH, INC., et al.,[1] | Chapter 11 |
| Debtors. | Joint Administration Requested |

**MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING PURSUANT TO 11 U.S.C. §§ 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e) AND 507 AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING PRIMING LIENS, PRIORITY LIENS AND SUPERPRIORITY CLAIMS TO THE DIP LENDER, (III) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED PARTIES, (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c) AND (V) GRANTING RELATED RELIEF**

Blue Earth, Inc. ("**Blue Earth**") and Blue Earth Tech, Inc., the above-captioned debtors and

debtors in possession (collectively, the "**Debtors**"), hereby file this motion (the "**Motion**") for entry

---

[1] The last four digits of each of the Debtors' tax identification numbers are Blue Earth, Inc. (1496) and Blue Earth Tech, Inc. (0269). The location of the Debtors' headquarters and service address is 235 Pine Street, Suite 1100, San Francisco, California 94104.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

of an interim order substantially in the form attached hereto as **Exhibit 1** (this "**Interim Order**") and a final order (the "**Final Order**"), under sections 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "**Bankruptcy Code**") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), seeking, *inter alia*:

(a) authorization for the Debtors to obtain senior secured postpetition financing in an aggregate principal amount not to exceed $3 million (the "**DIP Credit Facility**") pursuant to section 364 of the Bankruptcy Code and pursuant to the terms of the Interim Order, the Final Order and that certain Debtor-In-Possession Term Sheet, dated as of March 21, 2016, by and between the Debtors and Jackson Investment Group, LLC, in its capacity as the "**DIP Lender**," in substantially the form attached as Exhibit A to the Interim Order (as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, and the Interim Order, the "**DIP Term Sheet**"), a Security Agreement (as defined in the DIP Term Sheet) and any related documents required to be delivered by or in connection with the DIP Term Sheet (collectively, the "**DIP Credit Documents**");

(b) authorization for the Debtors to execute and enter into the DIP Credit Documents and to perform such other and further acts as may be required in connection with the DIP Credit Documents;

(c) authorization for the Debtors to grant automatically perfected security interests, liens and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code) in favor of the DIP Lender to secure the repayment of all obligations of the Debtors under and with respect to the DIP Credit Facility and the DIP Credit Documents;

(d) authorization for the Debtors' use of cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code) constituting Collateral under the Prepetition Documents (as defined herein) on the terms and conditions set forth in the Interim Order and in the DIP Credit Documents;

DOCS_SF:90958.2 09999/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 16-30296   Doc# 11   Filed: 03/21/16   Entered: 03/21/16 17:43:23   Page 2 of 74

(e)  authorization for the Debtors to provide adequate protection of the prepetition liens and security interests of Jackson Investment Group, LLC, in its capacity as the "**Prepetition Lender**" under the Prepetition Documents, which Prepetition Liens (as defined herein) are being primed by the liens securing the repayment of the DIP Credit Facility in accordance with the Interim Order and the DIP Term Sheet;

(f)  authorization for the Debtors to use Cash Collateral and the proceeds from the DIP Credit Facility upon entry of the Interim Order (a) to pay related postpetition transaction costs, fees and expenses with respect to the DIP Credit Facility; (b) to provide working capital, and for other general corporate purposes of the Loan Parties (as defined in the DIP Term Sheet), (c) to fund the Carve-Out; and (d) to pay administration costs of the Cases;

(g)  modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors, the DIP Lender, and the Prepetition Lender to implement the terms of the Interim Order;

(h)  an emergency interim hearing (the "**Interim Hearing**") on the Motion for the Court to consider entry of the Interim Order, which authorizes the Debtors to borrow under the DIP Credit Documents, on an interim basis, up to an aggregate principal or face amount not to exceed $1 million;

(i)  the scheduling of a final hearing (the "**Final Hearing**") on the Motion to consider entry of a Final Order authorizing the borrowings under the DIP Credit Documents on a final basis and approval of notice procedures with respect thereto; and

(j)  the granting of certain related relief.

In support of the Motion, the Debtors respectfully represent as follows:

## I.

## <u>JURISDICTION</u>

The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3

Case: 16-30296   Doc# 11   Filed: 03/21/16   Entered: 03/21/16 17:43:23   Page 3 of 74

The statutory basis for the relief requested herein is Bankruptcy Code sections 105, 361, 362, 363, 364, 503(b), and 507 and Bankruptcy Rules 2002, 4001 and 9014.

## II.

## MOTION

As more fully set forth herein and in the *Declaration of G. Robert Powell in Support of First Day Motions*, the Debtors have an urgent and immediate need for access to cash collateral and borrowings under the DIP Credit Facility with the DIP Lender in the principal amount of up to $3 million following entry of the Final Order, of which $1 million would be available under the proposed Interim Order.

The Debtors and their subsidiaries are a comprehensive provider of energy efficiency and alternative/renewable energy solutions for small and medium-sized commercial and industrial facilities. The Debtors build, manage, own and operate independent power generation and management systems geared towards helping commercial and industrial building owners save energy and money, and reduce their carbon footprint.

Without the proposed postpetition financing and use of cash collateral, the Debtors will not have any liquidity to operate their business, and therefore will be unable to fund ordinary course expenditures or pay the expenses necessary to administer their chapter 11 cases. Simply put, without access to financing and continued use of cash collateral, the Debtors (and their subsidiaries) will be required to cease operations and liquidate other than as a going concern, causing irreparable harm to the Debtors, their estates, and creditors. Accordingly, the Debtors have an urgent and immediate need for the borrowings under the DIP Credit Facility and use of cash collateral contemplated herein.

Case: 16-30296   Doc# 11   Filed: 03/21/16   Entered: 03/21/16 17:43:23   Page 4 of 74

## III.

## INTRODUCTORY STATEMENT AND
## COMPLIANCE WITH GUIDELINES FOR FINANCING STIPULATIONS

The relevant provisions of the DIP Credit Facility are as follows:[2]

| Term | Description | Location in Documents |
|---|---|---|
| Borrowers | Debtors | DIP Term Sheet § 1. |
| Guarantors | None | |
| DIP Lender | Jackson Investment Group, LLC | DIP Term Sheet, opening recital. |
| Borrowing Limits | $1 million on an interim basis and $3 million on a final basis, in the form of a multi-advance term loan. No portion of the loan may be re-borrowed once repaid. | DIP Term Sheet § 2. Interim Order at p. 2 and ¶ 2. |
| Interest Rate | 9% per annum, plus 2% upon default, payable monthly in arrears. | DIP Term Sheet §§ 6, 7. |
| Fees | (a) On the Closing Date and on the date of any additional advance, a closing fee equal to 2% of the principal amount of each such advance, (b) a commitment fee, which shall accrue at the per annum rate of 0.50% on the daily undrawn portion of the DIP Facility and shall be payable in arrears on each required interest payment date; and (c) all other fees and expenses of Lender as set forth in the DIP Term Sheet. All such fees shall be deemed fully earned when due and shall be non-refundable and such fees shall be included in the Approved Budget and be paid from the proceeds of the Term Loan. | DIP Term Sheet § 8. |
| Termination Date | The earlier of (a) the 125th day after the Petition Date, (b) the acceleration of the Term Loan as a result of any Event of Default, and (c) as otherwise provided in the Interim Order or the Final Order. On the Termination Date, the DIP Lender shall have no further obligation to make any advances under the DIP Facility, and all outstanding Obligations shall immediately become due and payable by the Debtors to the DIP Lender. | DIP Term Sheet § 3. |

---

[3]    The following chart summarizes the material terms and conditions of the DIP Credit Facility. In the event of any inconsistency with the DIP Credit Documents, the terms and conditions of the DIP Credit Documents shall control.

5

Case: 16-30296    Doc# 11    Filed: 03/21/16    Entered: 03/21/16 17:43:23    Page 5 of 74

| Term | Description | Location in Documents |
|------|-------------|----------------------|
| Use of Proceeds of Postpetition Loan and Cash Collateral | Disbursement pursuant to the Budget attached to this Motion as **Exhibit 2**, provided, however that the disbursements may exceed the amounts set forth in the Approved Budget (a) for any line-itemed expense (a "**Line-Itemed Expense**") by no more than 10% in respect of such Line-Itemed Expense and (b) in any event, and not to exceed the Commitment, no more than 5% in respect of the aggregate amounts set forth in the Approved Budget based on each consecutive non-overlapping 4 week post-petition period. | DIP Term Sheet §§ 5, 12.<br>**Exhibit 2** to this Motion. |
| Security, Priority, and Adequate Protection | Consensual priming liens in favor of the DIP Lender on substantially all assets of the Debtors, subject to the Carve-Out and excluding Permitted Liens and Avoidance Actions (except for Section 549). The DIP liens in favor of the DIP Lender will be senior to the liens of the Prepetition Lender. The DIP liens will include any previously unencumbered prepetition assets of the Debtors, specifically including commercial tort claims and deposit accounts. The Prepetition Lender does not have liens on Blue Earth's membership interests in Maili PV 01, LLC, and Blue Earth CHP, Inc.'s membership interests in Sumter Heat and Power LLC, which will now be covered by a lien in favor of the DIP Lender, but subject to any prior valid liens on such assets.<br><br>Superpriority administrative claims in favor of the DIP Lender in the amount of the DIP loan, which claims shall have recourse to all of the Debtors' assets, including, upon entry of the Final Order, Avoidance Actions.<br><br>Replacement liens and superpriority administrative claims in favor of the Prepetition Lender, junior to the DIP loan, to the extent of diminution in value of the prepetition collateral, subject to the Carve-Out and excluding Permitted Liens and Avoidance Actions. | Interim Order ¶¶ 8-10. |

Case: 16-30296   Doc# 11   Filed: 03/21/16   Entered: 03/21/16 17:43:23   Page 6 of 74

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| Term | Description | Location in Documents |
|---|---|---|
| Carve-Out | (1) Pre-default: accrued but unpaid budgeted expenses, including employee paid time off (up to priority caps), plus allowed and unpaid fees and expenses of estate professionals in an aggregate amount not to exceed the amounts set forth for each professional in the Budget as of the default; (2) Post-default: $100,000 post-trigger Carve-Out cap for Debtors' professionals and $50,000 for Committee's professionals; (3) $25,000 for a subsequently appointed chapter 7 trustee; and (4) statutory U.S. Trustee fees. | Interim Order ¶ 12. |
| Plan and Sale Process Milestones | Milestones: (1) a plan of reorganization in form and substance acceptable to the DIP Lender for the Debtors (the "**Plan of Reorganization**") shall have been filed with the Bankruptcy Court no later than 30 days after the Petition Date, (2) a disclosure statement in form and substance acceptable to the DIP Lender in respect of the Plan of Reorganization shall have been approved by an order of the Court in form and substance acceptable to the DIP Lender no later than 75 days after the Petition Date, (3) the Plan of Reorganization shall have been confirmed by an order of the Court in form and substance acceptable to the DIP Lender no later than 120 days after the Petition Date and (4) the effective date of the Plan of Reorganization shall have occurred no later than 125 days after the Petition Date. | DIP Term Sheet § 14. |

Pursuant to the Court's *Guidelines for Cash Collateral and Financing Stipulations* ("**Guidelines**"), the Debtors have listed below each of the provisions that are identified in the Guidelines as provisions that the Court will not ordinarily approve and have identified whether such provisions are applicable here:

7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

| Provision | Description |
| --- | --- |
| Cross-collateralization clauses and "roll-ups" | No cross-collateralization protection to any prepetition secured creditor, other than replacement liens as set forth in the Interim Order. |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection, or amount of secured party's lien or debt | **None.** All of the Debtors' stipulations are subject to a challenge by the Committee or a party in interest that obtains standing and commences an adversary proceeding within the earlier of seventy-five (75) days after the Petition Date or sixty (60) days after the appointment of the Committee. *See* Interim Order Recital E, ¶ 25. |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's lien and liens held by persons who are not party to the stipulation | **None.** All of the Debtors' stipulations are subject to a challenge by the Committee or a party in interest that obtains standing and commences an adversary proceeding within the earlier of seventy-five (75) days after the Petition Date or sixty (60) days after the appointment of the Committee. *See* Interim Order Recital E, ¶ 25. |
| Waivers of 11 U.S.C. § 506(c), *unless* the waiver is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds | **None.** Surcharge waiver is only effective while the Debtors are authorized to borrow funds or use cash collateral.<br><br>*See* Interim Order ¶ 16. |
| Provisions that operate, as a practical matter, to divest the debtor in possession of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable law | The DIP Credit Facility imposes certain plan-related milestones (*See* DIP Term Sheet § 14).<br><br>The DIP Term Sheet contains numerous affirmative covenants, negative covenants, and events of default (*see generally*, §§ 16, 17, 18). Among other things, under the DIP Term Sheet, the Debtors waive any right they may have to seek authority: (i) to obtain postpetition loans or other financial accommodations except the obligations owed to the DIP Lender; or (ii) to sell, transfer or dispose of any of their assets or properties, except for transactions in the ordinary course of business (*see* DIP Term Sheet § 17). |
| Releases of liability for the creditor's alleged prepetition torts or breaches of contract | **Yes.** Releases of the Prepetition Lender are included, subject to the challenge rights set forth in paragraph 25 of the Interim Order. |
| Waivers of, or liens on any of the estate's rights arising under Bankruptcy Code §§ 544, 545, 547, 548, 549, 553, 723(a), or 724(a), or the proceeds of any such rights | Only as to actions involving postpetition transfers arising under section 549 of the Bankruptcy Code. The Interim Order grants liens in favor of the DIP Lender that extend to any claims and causes of action under section 549 of the Bankruptcy Code and any proceeds thereof and property received on account thereof. *See* Interim Order ¶ 8. The DIP Lender's superpriority claims are also entitled to recourse against the proceeds of Avoidance Actions, subject to entry of the Final Order. *Id.* at ¶ 9. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

8

DIP FINANCING MOTION

| Provision | Description |
|---|---|
| Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee | **Yes.** Without any further order, following the occurrence and during the continuation of an Event of Default, the DIP Lender may cease providing additional loans and demand immediate payment.<br><br>Relief from stay will be granted to further exercise remedies upon the expiration of the fifth (5th) business day following notice, unless the Court orders otherwise at an emergency hearing where the only issue is whether an Event of Default has in fact occurred or is no longer continuing. *See* Interim Order ¶ 22. |
| Waivers of procedural requirements, including those of foreclosure mandated under applicable nonbankruptcy law, and for perfection of replacement liens | **Yes.** The DIP Lender is not required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction, or take any other action, to attach or perfect the security interests and liens granted under the DIP Credit Facility and the Interim Order. *See* Interim Order ¶ 11. |
| Waivers, effective on default or expiration, of the debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | **None.** |
| Findings of fact on matters extraneous to the approval process | **None.** |
| Provisions providing unreasonable treatment with respect to fees or professionals retained by a creditors' committee compared to any carve-outs provided for professionals retained by the debtor in possession or trustee | **None.** Committee fees are set forth in the Budget at lesser amounts than the Debtors' professionals. *See* **Exhibit 2**. |
| Provisions that provide an inadequate carve-out for a subsequently appointed trustee in the case, whether before or after conversion | **None.** Carve-Out of $25,000 for chapter 7 trustee is included. |

## IV.

## <u>CERTIFICATION</u>

The undersigned counsel for the Debtors has read the Motion; to the best of my knowledge, information, and belief, formed after reasonable inquiry, the terms of the relief sought in the motion are in conformity with the Court's *Guidelines for Cash Collateral and Financing Motions and Stipulations,* except as set forth herein. I understand and have advised the Debtors that the Court

9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 16-30296    Doc# 11    Filed: 03/21/16    Entered: 03/21/16 17:43:23    Page 9 of 74

may grant appropriate relief under Bankruptcy Rule 9024 if the Court determines that a material element of the Motion was not adequately disclosed in the Introductory Statement.

Dated: March 21, 2016                    PACHULSKI STANG ZIEHL & JONES LLP


                                         By: */s/ Debra Grassgreen*
                                             Jeffrey N. Pomerantz
                                             Debra I. Grassgreen
                                             John W. Lucas
                                             Malhar S. Pagay

                                             Proposed Attorneys for Debtors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## BACKGROUND

On March 21, 2016 (the "**Petition Date**"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

No request has been made for the appointment of a trustee or an examiner in these cases. No official committee of unsecured creditors has been appointed by the Office of the United States Trustee.

## II.

## THE DEBTORS' PREPETITION SECURED INDEBTEDNESS

**A.**    **The Prepetition Secured Notes**

September 2015 Secured Note: Pursuant to that certain Note Purchase Agreement, dated as of September 10, 2015 (as previously amended by various omnibus amendment agreements entered into among Blue Earth, the Guarantors and the Prepetition Lender, and as further amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "**NPA**"), by and between the Prepetition Lender and Blue Earth, Blue Earth issued a 15% Senior Secured Note due February 29, 2016 in favor of the Prepetition Lender on September 10, 2015 in the original principal amount of $10,600,000 (the "**September 2015 Secured Note**"). All obligations of Blue Earth arising under the September 2015 Secured Note, including all principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Lender by Blue Earth, of any kind or nature, whether or not evidenced by any note, agreement or other instrument shall hereinafter be referred to as the "**September 2015 Secured Note Obligations**."

Case: 16-30296   Doc# 11   Filed: 03/21/16   Entered: 03/21/16 17:43:23   Page 11 of 74

The proceeds of the September 2015 Secured Note were used, among other things, to refinance (the "**Prior Refinancing**") that certain 12% Senior Convertible Note, in the principal amount of $10,000,000 issued on March 10, 2015 by Blue Earth to Prepetition Lender pursuant to that certain Note and Warrant Purchase Agreement dated as of March 10, 2015 by and among Blue Earth and the Prepetition Lender. In connection with the Prior Refinancing, the Guarantors (defined below) and Blue Earth entered in that certain Omnibus Amendment and Joinder Agreement dated as of September 10, 2015 pursuant to which, among other things, Blue Earth and the Guarantors agreed that (i) the Prepetition Note Security Agreement (defined below) secured all obligations of Blue Earth under the NPA and the September 2015 Secured Note and all guaranty obligations of the Guarantors under the Prepetition Guaranty Agreement (defined below), and (ii) that the guarantors guarantied all obligations of Blue Earth under the NPA and the September 2015 Secured Note pursuant to the Prepetition Guaranty Agreement (defined below). A similar omnibus agreement was entered into in connection with each subsequent issuance of Prepetition Secured Notes.

December 2015 Secured Note: Pursuant to the NPA, Blue Earth issued a 9% Senior Secured Note due February 29, 2016 in favor of the Prepetition Lender on December 11, 2015 in the original principal amount of $7,154,639 (the "**December 2015 Secured Note**"). All obligations of Blue Earth arising under the December 2015 Secured Note, including all principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Lender by Blue Earth, of any kind or nature, whether or not evidenced by any note, agreement or other instrument shall hereinafter be referred to as the "**December 2015 Secured Note Obligations**."

First February 2016 Secured Note: Pursuant to the NPA, Blue Earth issued a 9% Senior Secured Note due February 29, 2016 in favor of the Prepetition Lender on February 11, 2016 in the original principal amount of $250,000 (the "**First February 2016 Secured Note**"). All obligations of Blue Earth arising under the First February 2016 Secured Note, including all principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys',

12

Case: 16-30296    Doc# 11    Filed: 03/21/16    Entered: 03/21/16 17:43:23    Page 12 of 74

accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Lender by Blue Earth, of any kind or nature, whether or not evidenced by any note, agreement or other instrument shall hereinafter be referred to as the "**First February 2016 Secured Note Obligations**."

Second February 2016 Secured Note: Pursuant to the NPA, Blue Earth issued a 9% Senior Secured Note due March 31, 2016 in favor of the Prepetition Lender on February 29, 2016 in the original principal amount of $100,000 (the "**Second February Secured 2016 Note**"). All obligations of Blue Earth arising under the Second February 2016 Secured Note, including all principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Lender by Blue Earth, of any kind or nature, whether or not evidenced by any note, agreement or other instrument shall hereinafter be referred to as the "**Second February 2016 Secured Note Obligations.**"

First March 2016 Secured Note: Pursuant to the NPA, Blue Earth issued a 9% Senior Secured Note due May 18, 2016 in favor of the Prepetition Lender on March 18, 2016 in the original principal amount of $150,000 (the "**First March Secured 2016 Note**"). All obligations of Blue Earth arising under the First March 2016 Secured Note, including all principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Lender by Blue Earth, of any kind or nature, whether or not evidenced by any note, agreement or other instrument shall hereinafter be referred to as the "**First March 2016 Secured Note Obligations.**"

Second March 2016 Secured Note: Pursuant to the NPA, Blue Earth issued a 9% Senior Secured Note due May 18, 2016 in favor of the Prepetition Lender on March 21, 2016 in the original

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

principal amount of $569,581.55 (the "**Second March Secured 2016 Note**" and together with the September 2015 Secured Note, the December 2015 Secured Note, the First February 2016 Secured Note, the Second February Secured Note and the First March Secured Note, the "**Prepetition Secured Notes**").  All obligations of Blue Earth arising under the Second March 2016 Secured Note, including all principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Lender by Blue Earth, of any kind or nature, whether or not evidenced by any note, agreement or other instrument shall hereinafter be referred to as the "**Second March 2016 Secured Note Obligations**" and together with the September 2015 Secured Note Obligations, the December 2015 Secured Note Obligations, the First February 2016 Secured Note Obligations, the Second February 2016 Secured Note Obligations and the First March Secured Note Obligations, the "**Prepetition Secured Notes Obligations**."

Prepetition Guaranties and Collateral.  Pursuant to (i) that certain Guaranty, dated as of March 10, 2015, by and among the following subsidiaries of Blue Earth: Blue Earth Generator, Inc., Blue Earth Finance, Inc., Blue Earth Management Services, Inc., Blue Earth Solar, Inc., Blue Earth Power Performance Solutions, Inc., Ecolegacy Gas & Power, LLC, Blue Earth Energy Power Solutions, LLC, Blue Earth Tech, Inc., Blue Earth CHP, Inc., Brooks Heat & Power LTD, E$^2$B Growth, Inc., Ensite Power, Inc. (collectively, the "**Guarantors**") in favor of the Prepetition Lender (as previously amended by various omnibus amendment agreements entered into among Blue Earth, the Guarantors and the Prepetition Lender, and as further amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "**Prepetition Guaranty Agreement**"), each of the Guarantors, among other things, guaranteed the payment of all of the Prepetition Secured Notes Obligations (all of the obligations of the Guarantors in favor of the Prepetition Lender under the Prepetition Guaranty Agreement are referred to herein collectively as the "**Prepetition Secured Guaranty Obligations**"; together with the Prepetition Secured Notes Obligations referred to herein collectively as the "**Prepetition Secured Obligations**"); and (ii) that certain Pledge and Security

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

14

Agreement, dated as of March 10, 2015, by and among Blue Earth, the Guarantors, the Prepetition Lender, and each other party signatory thereto (as previously amended by various omnibus amendment agreements entered into among Blue Earth, the Guarantors and the Prepetition Lender, and as further amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "**Prepetition Note Security Agreement**" and together with the Guaranty, the NPA and the Prepetition Secured Notes, the "**Prepetition Documents**"), Blue Earth and each of the Guarantors granted to the Prepetition Lender to secure all of the Prepetition Secured Obligations, a security interest in and continuing lien (the "**Prepetition Liens**") on substantially all of Blue Earth's and each Guarantor's assets (subject to certain exceptions agreed by the parties thereto as set forth in the Prepetition Documents), including, but not limited to, all of Blue Earth's and such Guarantor's accounts, chattel paper, documents, general intangibles, goods (including, without limitation, inventory, equipment and fixtures), instruments, intellectual property, investment property, deposit accounts, money, cash or cash equivalents, commercial tort claims, a pledge of one hundred percent (100%) of the capital stock of each of its domestic subsidiaries (subject to certain exceptions agreed by the parties thereto as set forth in the Prepetition Documents) and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing, in each case, whether then owned or existing or thereafter acquired or arising, to secure. All collateral granted or pledged by Blue Earth and the Guarantors pursuant to the Prepetition Documents shall collectively be referred to herein as the "**Prepetition Collateral**."

The Prepetition Collateral excludes certain assets pledged to TCA (as defined below) and the Prepetition Documents contain a subordination provision that subordinates the Prepetition Liens to liens pledged to Laird Q. Cagan (the "**Cagan Subordination**") which subordination is limited to not more than $1,333,147 (less any principal repayments thereof) in secured debt in respect of the Cagan Loan (as defined below) in accordance with Section 28(b) of that certain Pledge and Security Agreement dated March 10, 2015 among Blue Earth and certain of its subsidiaries and the Prepetition Lender, and as more particularly set forth in the Prepetition Documents. The Prepetition Lender and DIP Lender are reviewing the interests of TCA and Laird Q. Cagan, and expressly

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

15

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

reserve all rights as to the validity, priority, perfection or extent of the interests of TCA and Laird Q. Cagan.

The Debtors have obtained UCC searches and otherwise reviewed the Prepetition Documents to determine that the Prepetition Lender has a valid security interest and lien in substantially all of the Debtors' assets, excluding commercial tort claims (because none were identified prepetition) and has an unperfected security interest in deposit accounts (because the Prepetition Lender does not have control of such accounts, but does have a perfected security interest on all identifiable cash proceeds of Prepetition Collateral in such deposit accounts).

As of the Petition Date, the Debtors were indebted to the Prepetition Lender for the aggregate principal balance of the Prepetition Secured Notes Obligations in an amount not less than approximately $21,747,056, plus all accrued and unpaid default principal amounts, interest (including default interest) expenses and fees (including late fees) under the Prepetition Secured Notes and other Prepetition Secured Obligations.

**B.      Summary of Other Prepetition Secured Debt**

TCA Global Credit Master Fund LP.  Blue Earth and twelve of its direct and indirect wholly-owned subsidiaries entered into a Credit Agreement with TCA Global Credit Master Fund LP ("**TCA**"), dated as of January 31, 2013, effective February 22, 2013 and last amended on July 6, 2015 (the "**TCA Agreement**").  Pursuant to the Second Amendment to the TCA Agreement, dated February 24, 2015, TCA loaned BEI $3,000,000, purportedly secured by 100% of Blue Earth's membership interests in Maili PV 01, LLC, and Blue Earth CHP, Inc.'s membership interests in Sumter Heat and Power LLC, as well as shares of Blue Earth's Series D Convertible Preferred Stock.  As of February 1, 2016, the principal balance due under the TCA Agreement was $1,029,842.

Laird Q. Cagan.  Pursuant to a series of promissory notes issued from 2012 through 2013, Blue Earth borrowed funds from Laird Q. Cagan, an insider of the Debtors.  Blue Earth's obligations under such promissory notes are secured by all rights and proceeds of five photovoltaic installations in southern California in connection with a Solar PV Joint Development Agreement dated August

16

14, 2012 with Sunvalley Solar, Inc. As of the Petition Date, the principal balance due to Mr. Cagan under the notes was $1,333,000 (the "**Cagan Loan**").

**III.**

**PROPOSED DIP CREDIT FACILITY**

**A.    The DIP Credit Facility and Use of Cash Collateral
       are Critical to the Debtors' Continued Operations**

The Debtors require immediate access to the DIP Credit Facility and cash collateral in order to sustain their ongoing operations and administer these chapter 11 cases. The Debtors have employees and vendors who depend on the Debtors to satisfy their obligations. The Debtors fully intend to satisfy such obligations on a postpetition basis. Absent immediate funding through the DIP Credit Facility and use of cash collateral, however, the Debtors would be forced to shut down their business and convert these cases to chapter 7, which would have a tremendously adverse effect on the Debtors' estates, their employees, vendors, and other constituents.

**B.    The Debtors' Selection of the DIP Lender**

Prior to agreeing to enter into the DIP Credit Facility with the DIP Lender, the Debtors contacted alternative funding sources. The Debtors were advised that no provision of credit would be made junior to the liens and claims of the Prepetition Lender. As a result, the Debtors and their professionals negotiated with the DIP Lender and its professionals as to the terms of the DIP Credit Facility and the proposed Interim Order, including consensual priming of the Prepetition Secured Obligations and access to cash collateral. Such negotiations were conducted at arm's length and in good faith. The Debtors believe, in the exercise of their sound business judgment, that the DIP Credit Facility and the other terms of the proposed Interim Order are the best credit terms currently available to these estates.

Case: 16-30296    Doc# 11    Filed: 03/21/16    Entered: 03/21/16 17:43:23    Page 17 of 74

# IV.

# ARGUMENT

## A.    The DIP Credit Facility Should Be Approved Under Bankruptcy Code Section 364(c), 364(d)(1)

The Debtors need funding in order to meet ongoing obligations necessary to run their business and administer these chapter 11 cases.  Pursuant to sections 364(c) and 364(d)(1) of the Bankruptcy Code, the Debtors request authority to enter into the DIP Term Sheet as an administrative expense, having priority over other administrative expenses and secured by a senior lien on substantially all of the property of the Debtors' estates, subject to Permitted Liens and the payment of Carve-Out Expenses.  The DIP Credit Facility will *consensually* prime and be senior to the Prepetition Secured Obligations.

Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of business judgment, incur secured debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interest of the estate.  *See, e.g., In re Ames Dept. Stores*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (with respect to postpetition credit, courts "permit debtors-in-possession to exercise their basic business judgment consistent with their fiduciary duties"); *In re Simasko Production Co.*, 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing agreement where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estate).

Section 364(c) of the Bankruptcy Code provides, in pertinent part, that:

> (c) If the trustee [or debtor in possession] is unable to obtain unsecured credit allowable-under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
> (1)  with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title:
>
> (2)  secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3)  secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Section 364(d)(1) of the Bankruptcy Code governs the incurrence of senior secured debt or "priming" loans. Pursuant to section 364(d)(1) of the Bankruptcy Code, the Court may, after notice and a hearing, authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien only if –

(1)    the trustee is unable to obtain such credit otherwise; and

(2)    there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1).

In satisfying the standards of section 364 of the Bankruptcy Code, a debtor need not seek credit from every available source, but should make a reasonable effort to seek other sources of credit available under sections 364(a) and (b) of the Bankruptcy Code. *See, e.g., Bray v. Shenandoah Fed. Sav. & Loan (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (trustee had demonstrated by good faith effort that credit was not available without senior lien by unsuccessfully contacting other financial institutions in immediate geographic area; "the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"). Instead, a debtor's efforts are to be considered on a case by case basis, particularly "[g]iven the 'time is of the essence' nature of this type of financing." *In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987). In *In re Sky Valley, Inc.*, 100 B.R. 107, 112-13 (Bankr. N.D. Ga. 1988), the bankruptcy court stated that "it would be unrealistic and unnecessary to require Debtors to conduct such an exhaustive search for financing" where the business suffered from financial stress, had little or no unencumbered property, and the primary property was subject to numerous liens, and thus the debtors' approach of only four lenders was sufficient under such circumstances. *See also In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (section 364(d)(1)(A) of the Bankruptcy Code satisfied where two banks refused to provide unsecured credit to debtor); *see also In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (element satisfied where "specialist in commercial lending practices . . . explained that most banks lend money only in return for a senior secured position. The debtor cannot obtain financing secured

by a lien on unencumbered property . . . because there is no property in the estate which is not already subject to a lien.").

The liens that the Debtors propose to grant to the DIP Lender to secure repayment of the DIP Credit Facility will prime the existing prepetition secured debt of the Prepetition Lender, but will do so *consensually*. Despite efforts to locate alternative funding sources, the Debtors do not have access to financing on alternative or better terms than the proposed DIP Credit Facility. Moreover, the Debtors cannot obtain the financing that they require via unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code. In addition, the DIP Credit Facility is essential for the Debtors to continue to operate and to pay for the goods and services that are necessary in the ordinary course of business.

As indicated above, section 364(c) of the Bankruptcy Code enumerates certain incentives that a bankruptcy court may grant to postpetition lenders. Such incentives are not exhaustive. Bankruptcy courts frequently have authorized the use of inducements not specified in the statute. *See, e.g., Unsecured Creditors' Comm. V. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 834 F.2d 599 (6th Cir. 1987) (affirming financing order that prohibited any challenges to the validity of already existing liens); *In re Defender Drug Stores*, 126 B.R. 76 (Bankr. D. Ariz. 1991) (authorizing enhancement fee to postpetition lender), *aff'd*, 145 B.R. 312, 316 (B.A.P. 9th Cir. 1992) ("[b]ankruptcy courts . . . have regularly authorized postpetition financial arrangements containing lender incentives beyond the explicit priorities and liens specified in section 364"); *In re Antico Mfg. Co.*, 31 B.R. 103 (Bankr. E.D.N.Y. 1983) (authorizing lien on prepetition collateral to secure postpetition indebtedness).

The Debtors propose to grant the DIP Lender certain enhancements in the form of senior liens against the Debtors' prepetition and postpetition assets, debt and security acknowledgements, releases, and waivers of rights under sections 506(c) and 552 of the Bankruptcy Code. The Debtors believe that such enhancements are reasonable in return for the funding available under the DIP Credit Facility. The Debtors also propose to grant the Prepetition Lender, replacement liens and superpriority claims for adequate protection, to the extent of diminution in the value of its collateral.

20

In short, the Debtors respectfully submit that the DIP Credit Facility satisfies sections 364(c) and (d) of the Bankruptcy Code. The best credit terms available to the Debtors are those set forth in the DIP Term Sheet. Thus, the Debtors believe that it is fair, reasonable, and necessary for the Court to approve the DIP Credit Facility and enter the Interim Order (and, subsequent to the Final Hearing, the Final Order). In addition to representing the best terms presently available to Debtors, the proposed DIP Credit Facility is also in the best interests of the Debtors' estates. It will provide the Debtors needed funding to maintain and operate their business and administer their chapter 11 cases. The DIP Credit Facility therefore is plainly in the best interests of Debtors' estates.

Based on the foregoing, the DIP Lender should be accorded the benefits of section 364(e) of the Bankruptcy Code in respect of the DIP Credit Facility because the DIP Lender has offered to extend such financing in good faith. Further, section 364(e) provides a lender with a presumption of good faith. *Weinstein, Eisen, Weiss LLP v. Gill* (*In re Cooper Common, LLC),* 424 F.3d 963, 969 (9th Cir. 2005).

**B.      The Debtors Should be Granted Access to Cash Collateral Under Bankruptcy Code Section 363(c)(1)**

The Debtors' use of property of the estates is governed by section 363 of the Bankruptcy Code. Section 363(c)(1) provides, in pertinent part, that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee [or debtor in possession] may enter into transactions, including the sale or lease of property of the estates, in the ordinary course of business, without notice or hearing, and may use property of the estates in the ordinary course of business without notice or hearing.

11 U.S.C. § 363(c)(1).

The Bankruptcy Code establishes a special requirement, however, regarding the debtor in possession's use of "cash collateral," defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estates and an entity other than the estates have an interest . . . ." 11 U.S.C. § 363(a). Section 363(c)(2) of the Bankruptcy Code permits the debtor in possession to use, sell, or lease cash collateral under subsection (c)(1) only if either of two alternative circumstances exists:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

(A) each entity that has an interest in such cash collateral consents; or
(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

Here, the DIP Lender and the Prepetition Lender consent to the use of cash collateral if consistent with the Budget and such use is absolutely necessary in the Debtors' business judgment to continue operations and maximize the value of these estates.

**V.**

**INTERIM ORDER AND FINAL HEARING**

Pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2), the Debtors request that the Court enter the Interim Order to prevent immediate and irreparable harm to these estates pending the Final Hearing and set a date for the Final Hearing within twenty-one days of the Petition Date. The Debtors intend for the Final Order to be in substantially the same form as the Interim Order and will submit a proposed form at or prior to the Final Hearing.

The urgent need to preserve the Debtors' business, and avoid immediate and irreparable harm to the estate, makes it imperative that the Debtors be authorized to access postpetition financing on an interim basis and use cash collateral, pending the Final Hearing, in order to continue their operations and administer these chapter 11 cases. Without the ability to borrow funds under the DIP Term Sheet and use cash collateral, the Debtors would be unable to meet their postpetition obligations or to fund their working capital needs, thus causing irreparable harm to the value of the Debtors' estates and ending the Debtors' reorganization efforts. Accordingly, the Debtors respectfully request that, pending the hearing on the Final Order, the Interim Order be approved in all respects and that the terms and provisions of the Interim Order be implemented and be deemed binding and that, after the Final Hearing, the Final Order be approved in all respects and the terms and provisions of the Final Order be implemented and be deemed binding.

**VI.**

**NOTICE**

The Motion has been served on the following parties or, in lieu thereof, on their counsel, if known: (a) the United States Trustee for Region 17, 235 Pine Street, Suite 700, San Francisco, CA

22

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

94104; (b) the Internal Revenue Service, Centralized Insolvency Operations, 11601 Roosevelt

Boulevard, Mail Drop N781, Philadelphia, Pennsylvania 19255; (c) all relevant state and local taxing

authorities; (d) the United States Attorney General, U.S. Department of Justice, 950 Pennsylvania

Avenue NW, Washington, DC 20530; (e) the Securities Exchange Commission, Attn: General

Counsel, 100 F Street NE, Washington, DC 20549; (f) the parties listed in the list(s) of creditors filed

by the Debtors in these cases pursuant to Bankruptcy Rule 1007(d); (g) counsel to the DIP Lender

and the Prepetition Lender; (h) all entities known or reasonably believed to have asserted a security

interest or lien against the Debtors; and (i) all parties having filed requests for notice in these cases.

The Debtors submit that, in light of the nature of the relief requested, no other or further notice need

be given.

## VII.

### CONCLUSION

Based upon the foregoing, the Debtors request entry of the Interim Order and the Final

Order under sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rule 4001

and local Bankruptcy Rule 4001-2: (i) authorizing the Debtors to (a) enter into and incur credit

under the DIP Term Sheet with the DIP Lender, (b) use cash collateral, and (c) provide adequate

protection to the Prepetition Lender in accordance with the provisions hereof, and (ii) scheduling the

Final Hearing.


Dated:   March 21, 2016                    PACHULSKI STANG ZIEHL & JONES LLP

                                           By: */s/ Debra Grassgreen*
                                               Jeffrey N. Pomerantz
                                               Debra I. Grassgreen
                                               John W. Lucas
                                               Malhar S. Pagay

                                           Proposed Attorneys for Debtors

23

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## <u>Exhibit List</u>

**Exhibit 1**       Interim Order -- DIP Term Sheet is attached as Exhibit A to the Interim Order

**Exhibit 2**       Approved Budget

# EXHIBIT 1

1    Jeffrey N. Pomerantz (CA Bar No. 143717)
    Debra I. Grassgreen (CA Bar No. 169978)
2    John W. Lucas (CA Bar No. 271038)
    PACHULSKI STANG ZIEHL & JONES LLP
3    150 California Street, 15th Floor
    San Francisco, California 94111-4500
4    Telephone: 415.263.7000
    Facsimile: 415.263.7010
5    Email: jpomerantz@pszjlaw.com
          dgrassgreen@pszjlaw.com
6            jlucas@pszjlaw.com

7    Proposed Attorneys for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re: | Case No.: 16-30296-DM |
| BLUE EARTH, INC., et al.,[1] | Chapter 11 |
| Debtors. | Joint Administration Requested |
| | **INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING PURSUANT TO 11 U.S.C. §§ 361, 362, 363(c), 363(e), 364(c), 364(d)(1), 364(e) AND 507 AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING PRIMING LIENS, PRIORITY LIENS AND SUPERPRIORITY CLAIMS TO THE DIP LENDER, (III) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION SECURED PARTIES, (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c) AND (V) GRANTING RELATED RELIEF** |

Upon the motion dated March 21, 2016 (the "Motion")[2] of Blue Earth, Inc. ("Blue Earth")

and Blue Earth Tech, Inc., as debtors and debtors in possession (collectively, the "Debtors") in the

above-referenced chapter 11 cases (the "Cases"), for entry of an interim order (this "Interim Order")

---

[1]    The last four digits of each of the Debtors' tax identification numbers are Blue Earth, Inc. (1496) and Blue Earth Tech, Inc. (0269). The location of the Debtors' headquarters and service address is 235 Pine Street, Suite 1100, San Francisco, California 94104.

[2]    Any capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

DOCS_SF:900590.09999/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

and a final order ("Final Order"), under sections 361, 362, 363(c), 363(e), 364(c), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), seeking, *inter alia*:

(i)     (A) authorization for Blue Earth (the "Borrower") to obtain senior secured postpetition financing in an aggregate principal amount not to exceed $3 million (the "DIP Credit Facility"), pursuant to section 364 of the Bankruptcy Code, this Interim Order, the Final Order and that certain DIP Term Sheet (defined below), dated as of March 21, 2016, by and between the Borrower and Jackson Investment Group, LLC, in its capacity as the "DIP Lender," in substantially the form attached hereto as Exhibit A (as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, and this Interim Order, the "DIP Term Sheet"), and any related documents required to be delivered by or in connection with the DIP Term Sheet including a security agreement (together with the DIP Term Sheet, collectively, the "DIP Credit Documents");

(ii)     authorization for the Debtors to execute and enter into the DIP Credit Documents and to perform such other and further acts as may be required in connection with the DIP Credit Documents;

(iii)     authorization for the Debtors to grant automatically perfected security interests, liens and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code) in favor of the DIP Lender to secure the repayment of all obligations of the Debtors under and with respect to the DIP Credit Facility and the DIP Credit Documents;

(iv)     authorization for the Debtors' use of Cash Collateral (defined below) constituting Collateral under the Prepetition Documents (as defined herein) on the terms and conditions set forth in this Interim Order and in the DIP Credit Documents;

(v)     authorization for the Debtors to provide adequate protection of the prepetition liens and security interests of Jackson Investment Group, LLC, in its capacity as the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

"Prepetition Lender" under the Prepetition Documents, which Prepetition Liens (as defined herein) are being primed by the liens securing the repayment of the DIP Credit Facility in accordance with this Interim Order and the DIP Term Sheet;[3]

(vi)    authorization for the Debtors to use Cash Collateral and the proceeds from the DIP Credit Facility upon entry of this Interim Order (a) to pay prepetition transaction costs, fees and expenses with respect to the DIP Lender and postpetition transaction costs, fees and expenses with respect to the Prepetition Lender and the DIP Lender; (b) to provide working capital, and for other general corporate purposes of the Debtors (as defined in the DIP Term Sheet), (c) to fund the Carve-Out; and (d) to pay administration costs of the Cases;

(vii)   modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to permit the Debtors, the DIP Lender, and the Prepetition Lender to implement the terms of this Interim Order;

(viii)  an emergency interim hearing (the "Interim Hearing") on the Motion for the Court to consider entry of this Interim Order, which authorizes the Borrower to borrow under the DIP Credit Documents, on an interim basis, up to an aggregate principal or face amount not to exceed $1 million;

(ix)    the scheduling of a final hearing (the "Final Hearing") on the Motion to consider entry of a Final Order authorizing the borrowings under the DIP Credit Documents on a final basis and approval of notice procedures with respect thereto; and

(x)     the granting of certain related relief.

The Interim Hearing having been held by this Court on March [__], 2016; and the Court having considered the Motion and all pleadings related thereto, including the record made at the Interim Hearing; and notice of the Interim Hearing having been given in accordance with

---

[3]     For the avoidance of doubt, no valid, perfected, enforceable and non-avoidable liens existing as of the Commencement Date that are senior to the Prepetition Liens are being primed under this Order, specifically including the Cagan Loan and the Cagan Subordination (as such terms are defined in the Motion) to the extent such are valid, perfected, enforceable and non-avoidable liens existing as of the Commencement Date that are senior to the Prepetition Liens and subject to the further limitation that such subordination is limited to not more than $1,333,147 (less any principal repayments thereof) in secured debt in respect of the Cagan Loan in accordance with Section 8(b) of that certain Pledge and Security Agreement dated March 10, 2015 among Blue Earth and certain of its subsidiaries and the Prepetition Lender.

3

DOCS_SF:900590.6 99999/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Bankruptcy Rules 4001(b), (c), and (d), and 9014; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**[4]

A.      On March 21, 2016 (the "Commencement Date"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The Debtors have provided notice of the Motion and the Interim Hearing by facsimile, electronic mail or overnight mail to: (i) the United States Trustee for Region 17, 235 Pine Street, Suite 700, San Francisco, CA 94104; (ii) the Internal Revenue Service, Centralized Insolvency Operations, 11601 Roosevelt Boulevard, Mail Drop N781, Philadelphia, Pennsylvania 19255; (iii) all relevant state and local taxing authorities; (iv) the United States Attorney General, U.S. Department of Justice, 950 Pennsylvania Avenue NW, Washington, DC 20530; (v) the Securities Exchange Commission, Attn: General Counsel, 100 F Street NE, Washington, DC 20549; (vi) the parties listed in the list(s) of creditors filed by the Debtors in the Cases pursuant to Bankruptcy Rule 1007(d) (collectively, the "Listed Top Creditors"); (vii) counsel to the DIP Lender and the Prepetition Lender; (viii) all entities known or reasonably believed to have asserted a security interest or lien against the Debtors; and (ix) all parties having filed requests for

---

[4] The findings and conclusions set forth in this Interim Order constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

4

notice in the Cases (the parties set forth in the preceding clauses (i) through (ix), collectively, the "Notice Parties").  Given the nature of the relief sought in the Motion, the Court concludes that no further notice is necessary for entry of this Interim Order.

D.     No official committee of unsecured creditors (upon the appointment thereof, the "Committee"), as provided for under section 1102 of the Bankruptcy Code, has been appointed in the Cases.

E.     Subject to paragraph 25 below, the Debtors hereby admit, stipulate and agree that:

(1)     *The Prepetition Secured Notes.*

(a)     September 2015 Secured Note:  Pursuant to that certain Note Purchase Agreement, dated as of September 10, 2015 (as previously amended by various omnibus amendment agreements entered into among Blue Earth, the Guarantors and the Prepetition Lender, and as further amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "NPA"), by and between the Prepetition Lender and Blue Earth, Blue Earth issued a 15% Senior Secured Note due February 29, 2016 in favor of the Prepetition Lender on September 10, 2015 in the original principal amount of $10,600,000 (the "September 2015 Secured Note").  All obligations of Blue Earth arising under the September 2015 Secured Note, including all principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Lender by Blue Earth, of any kind or nature, whether or not evidenced by any note, agreement or other instrument shall hereinafter be referred to as the "September 2015 Secured Note Obligations."

The proceeds of the September 2015 Secured Note were used, among other things, to refinance (the "Prior Refinancing") that certain 12% Senior Convertible Note, in the principal amount of $10,000,000 issued on March 10, 2015 by Blue Earth to Prepetition Lender pursuant to that certain Note and Warrant Purchase Agreement dated as of March 10, 2015 by and among Blue

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Earth and the Prepetition Lender. In connection with the Prior Refinancing, the Guarantors (defined below) and Blue Earth entered in that certain Omnibus Amendment and Joinder Agreement dated as of September 10, 2015 pursuant to which, among other things, Blue Earth and the Guarantors agreed that (i) the Prepetition Note Security Agreement (defined below) secured all obligations of Blue Earth under the NPA and the September 2015 Secured Note and all guaranty obligations of the Guarantors under the Prepetition Guaranty Agreement (defined below), and (ii) that the guarantors guarantied all obligations of Blue Earth under the NPA and the September 2015 Secured Note pursuant to the Prepetition Guaranty Agreement (defined below). A similar omnibus agreement was entered into in connection with each subsequent issuance of Prepetition Secured Notes.

(b)     December 2015 Secured Note: Pursuant to the NPA, Blue Earth issued a 9% Senior Secured Note due February 29, 2016 in favor of the Prepetition Lender on December 11, 2015 in the original principal amount of $7,154,639 (the "December 2015 Secured Note"). All obligations of Blue Earth arising under the December 2015 Secured Note, including all principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Lender by Blue Earth, of any kind or nature, whether or not evidenced by any note, agreement or other instrument shall hereinafter be referred to as the "December 2015 Secured Note Obligations."

(c)     First February 2016 Secured Note: Pursuant to the NPA, Blue Earth issued a 9% Senior Secured Note due February 29, 2016 in favor of the Prepetition Lender on February 11, 2016 in the original principal amount of $250,000 (the "First February 2016 Secured Note"). All obligations of Blue Earth arising under the First February 2016 Secured Note, including all principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the

6

Prepetition Lender by Blue Earth, of any kind or nature, whether or not evidenced by any note, agreement or other instrument shall hereinafter be referred to as the "First February 2016 Secured Note Obligations."

(d)  Second February 2016 Secured Note: Pursuant to the NPA, Blue Earth issued a 9% Senior Secured Note due March 31, 2016 in favor of the Prepetition Lender on February 29, 2016 in the original principal amount of $100,000 (the "Second February Secured 2016 Note"). All obligations of Blue Earth arising under the Second February 2016 Secured Note, including all principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Lender by Blue Earth, of any kind or nature, whether or not evidenced by any note, agreement or other instrument shall hereinafter be referred to as the "Second February 2016 Secured Note Obligations".

(e)  First March 2016 Secured Note:  Pursuant to the NPA, Blue Earth issued a 9% Senior Secured Note due May 18, 2016 in favor of the Prepetition Lender on March 18, 2016 in the original principal amount of $150,000 (the "First March Secured 2016 Note").  All obligations of Blue Earth arising under the First March 2016 Secured Note, including all principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Lender by Blue Earth, of any kind or nature, whether or not evidenced by any note, agreement or other instrument shall hereinafter be referred to as the "First March 2016 Secured Note Obligations."

(f)  Second March 2016 Secured Note:  Pursuant to the NPA, Blue Earth issued a 9% Senior Secured Note due May 18, 2016 in favor of the Prepetition Lender on March 21, 2016 in the original principal amount of $569,581.55 (the "Second March Secured 2016 Note" and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

together with the September 2015 Secured Note, the December 2015 Secured Note, the First February 2016 Secured Note, the Second February 2016 Secured Note and the First March Secured Note, the "Prepetition Secured Notes"). All obligations of Blue Earth arising under the Second March 2016 Secured Note, including all principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Lender by Blue Earth, of any kind or nature, whether or not evidenced by any note, agreement or other instrument shall hereinafter be referred to as the "Second March 2016 Secured Note Obligations" and together with the September 2015 Secured Note Obligations, the December 2015 Secured Note Obligations, the First February 2016 Secured Note Obligations, the Second February 2016 Secured Note Obligations and the First March Secured Note Obligations, the "Prepetition Secured Notes Obligations."

(2) *Prepetition Guaranties and Collateral.* Pursuant to (i) that certain Guaranty, dated as of March 10, 2015, by and among the following subsidiaries of Blue Earth: Blue Earth Generator, Inc., Blue Earth Finance, Inc., Blue Earth Management Services, Inc., Blue Earth Solar, Inc., Blue Earth Power Performance Solutions, Inc., Ecologacy Gas & Power, LLC, Blue Earth Energy Power Solutions, LLC, Blue Earth Tech, Inc. (a Debtor), Blue Earth CHP, Inc., Brooks Heat & Power LTD, E$^2$B Growth, Inc. and Ensite Power, Inc. (collectively, the "Guarantors") in favor of the Prepetition Lender (as previously amended by various omnibus amendment agreements entered into among Blue Earth, the Guarantors and the Prepetition Lender, and as further amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "Prepetition Guaranty Agreement"), each of the Guarantors, among other things, guaranteed the payment of all of the Prepetition Secured Notes Obligations (all of the obligations of the Guarantors in favor of the Prepetition Lender under the Prepetition Guaranty Agreement are referred to herein collectively as the "Prepetition Secured Guaranty Obligations"; together with the Prepetition Secured Notes Obligations referred to herein collectively as the "Prepetition Secured Obligations"); and (ii) that certain Pledge and Security Agreement, dated as of March 10, 2015, by and among Blue

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Earth, the Guarantors, the Prepetition Lender, and each other party signatory thereto (as previously amended by various omnibus amendment agreements entered into among Blue Earth, the Guarantors and the Prepetition Lender, and as further amended, restated, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "Prepetition Note Security Agreement" and together with the Guaranty, the NPA and the Prepetition Secured Notes, the "Prepetition Documents"), Blue Earth and each of the Guarantors granted to the Prepetition Lender to secure all of the Prepetition Secured Obligations, a security interest in and continuing lien (the "Prepetition Liens") on substantially all of Blue Earth's and each Guarantor's assets (subject to certain provisions agreed by the parties thereto as set forth in the Prepetition Documents and as described in the Motion with respect to TCA Global Credit Master Fund LP ("TCA") and Laird Q. Cagan, including the Prepetition Lender's and DIP Lender's reservation of rights as to the validity, priority, perfection or extent of TCA's and Laird Q. Cagan's interests), including, but not limited to, all of Blue Earth's and such Guarantor's accounts, chattel paper, documents, general intangibles, goods (including, without limitation, inventory, equipment and fixtures), instruments, intellectual property, investment property, deposit accounts, money, cash or cash equivalents, a pledge of capital stock of certain of its domestic subsidiaries (subject to certain exceptions agreed by the parties thereto as set forth in the Prepetition Documents and excluding commercial tort claims) and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing, in each case, whether then owned or existing or thereafter acquired or arising. All collateral granted or pledged by Blue Earth and the Guarantors pursuant to the Prepetition Documents shall collectively be referred to herein as the "Prepetition Collateral."

(3) *Validity and Priority of the Prepetition Liens, Claims and Obligations.*

(a) All Prepetition Documents executed and delivered by Blue Earth and the Guarantors to the Prepetition Lender are valid and enforceable by the Prepetition Lender against Blue Earth and the Guarantors. The Prepetition Lender duly perfected its liens upon and security interests in the Prepetition Collateral (excluding deposit accounts provided, however, the Prepetition Lender does have a duly perfected lien upon and security interest in identifiable cash proceeds of Prepetition Collateral in such deposit accounts) by, among other things, filing financing statements,

9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

and, where necessary, possessing the relevant instruments, certificates, or other property. All of such financing statements were validly executed by authorized representatives of Blue Earth and the Guarantors. Pursuant to the Prepetition Documents, the Prepetition Lender has perfected security interests in and liens on all of the Prepetition Collateral (excluding deposit accounts provided, however, the Prepetition Lender does have a duly perfected lien upon and security interest in identifiable cash proceeds of Prepetition Collateral in such deposit accounts), including, without limitation, cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code) (collectively, the "Cash Collateral").

(b)     The liens and security interests of the Prepetition Lender in the Prepetition Collateral, including the Cash Collateral, as security for the Prepetition Secured Obligations, constitute valid, binding, enforceable and perfected liens and security interests and are not subject to avoidance, disallowance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except insofar as such liens are subordinated to the DIP Liens and the Carve-Out (as defined below) in accordance with the provisions of this Interim Order). The Debtors further admit, acknowledge and agree that, as of the Petition Date: (a) the Prepetition Secured Notes Obligations constitute legal, valid and binding obligations of Blue Earth enforceable in accordance with the terms of the Prepetition Documents, and the Prepetition Secured Guaranty Obligations constitute legal, valid and binding obligations of Guarantors enforceable in accordance with the terms of the Prepetition Documents; (b) the Prepetition Liens had priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Documents (the "Permitted Liens")[5] or as set forth above; (c) no offsets, defenses, causes of action, objections, challenges or counterclaims of any kind to the Prepetition Secured Obligations exist; (d) no portion of the Prepetition Secured Obligations are subject to avoidance, disallowance, reduction, objection, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates and the Guarantors have no valid

---

[5]  Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Liens are valid, senior, perfected, and non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtors, the DIP Lender, the Prepetition Lender and the Committee (if appointed) to challenge the validity, priority, perfection or extent of any such Permitted Liens and/or security interests.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Lender with respect to the Prepetition Documents whether arising at law or at equity, including, without limitation, any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510, 541 or 542 through 553, inclusive, of the Bankruptcy Code; (f) the Debtors and their estates and the Guarantors have waived, discharged, and released any right they may have to challenge any of the Prepetition Secured Obligations and the security for these obligations, and to assert any offsets, defenses, claims, objections, challenges and/or causes of action against the Prepetition Lender.

(4)     As of the Commencement Date, the Debtors were truly and justly indebted to the Prepetition Lender, without defense, counterclaim, recoupment or offset of any kind, for the aggregate principal balance of the Prepetition Secured Obligations in an amount not less than $21,747,056, plus all accrued and unpaid default principal amounts, interest (including default interest), expenses and fees (including late fees) under the Prepetition Documents.

F.     The Debtors have an immediate and critical need to obtain postpetition financing under the DIP Credit Facility and to use Cash Collateral to, among other things, finance the ordinary costs of their operations, maintain business relationships with vendors, suppliers and customers, make payroll, make capital expenditures, satisfy other working capital and operational needs and fund the administration and prosecution of the Cases. The Debtors' access to sufficient working capital and liquidity through the incurrence of postpetition financing under the DIP Credit Facility and the use of Cash Collateral under the terms of this Interim Order is vital to the preservation and maintenance of the going concern value of the Debtors' estates, the orderly operation of the Debtors' businesses and, ultimately, the success of the Cases. Consequently, without access to the DIP Credit Facility and the continued use of Cash Collateral, to the extent authorized pursuant to this Interim Order, the Debtors and their estates would suffer immediate and irreparable harm.

G.     The Debtors are unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

their estates under section 364(c)(2) of the Bankruptcy Code and (y) a junior lien on encumbered assets of their estates under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Lender on terms more favorable than the terms of the DIP Credit Facility. The only available source of secured credit available to the Debtors is the DIP Credit Facility. The Debtors are not able to operate and manage their business solely with the use of Cash Collateral. The Debtors require both additional financing under the DIP Credit Facility and the continued use of Cash Collateral under the terms of this Interim Order in order to satisfy their postpetition liquidity needs.

H.     The DIP Lender has indicated a willingness to provide the Debtors with certain financing commitments, but solely on the terms and conditions set forth in this Interim Order and in the DIP Credit Documents. After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lender pursuant to the terms of this Interim Order and the DIP Credit Documents represents the best financing presently available to the Debtors.

I.     Solely on the terms and conditions set forth in this Interim Order and in the DIP Credit Documents, the Prepetition Lender is prepared to consent to: (i) the imposition of certain liens under section 364(d)(1) of the Bankruptcy Code in favor of the DIP Lender, which liens will prime the Prepetition Liens; and (ii) the Debtors' use of the Prepetition Collateral (including the Cash Collateral), provided that the Court authorizes the Debtors, pursuant to sections 361, 363 and 364(d) of the Bankruptcy Code, to grant to the Prepetition Lender, as and for adequate protection and without in any way limiting the Prepetition Lender's rights under section 552 of the Bankruptcy Code, but subject to the Carve-Out, (1) a security interest in and lien and mortgage upon the DIP Collateral (as defined hereinafter) in favor of the Prepetition Lender, which shall have the priorities set forth in paragraph 10 hereof (the "Prepetition Lender's Adequate Protection Lien") and (2) superpriority administrative expense claims under section 507(b) of the Bankruptcy Code (collectively, the "Adequate Protection Priority Claims").

J.     The security interests and liens granted pursuant to this Interim Order to the DIP Lender are appropriate under section 364(d) of the Bankruptcy Code because, among other

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

things:  (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in the property of the Debtors' estates; (ii) the holders of such valid, perfected, prepetition security interests and liens have consented to the security interests and priming liens granted pursuant to this Interim Order to the DIP Lender;  and/or (iii) the interests of any holder of a valid, perfected, prepetition security interest or lien are otherwise adequately protected.  In particular, the security interests and liens of the Prepetition Lender are adequately protected by the Prepetition Lender's Adequate Protection Lien and the Adequate Protection Priority Claims.

K.     Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  In particular, the authorization granted herein for the Debtors to execute the DIP Credit Documents, to continue using Cash Collateral and to obtain interim financing, including on a priming lien basis, is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  Entry of this Interim Order is in the best interest of the Debtors, their estates and creditors.  The terms of the DIP Credit Documents (including the Debtors' continued use of Cash Collateral) are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

L.     The Debtors, the DIP Lender, and the Prepetition Lender have negotiated the terms and conditions of the DIP Credit Documents (including the Debtors' continued use of Cash Collateral) and this Interim Order in good faith and at arm's-length, and any credit extended and loans made to the Debtors pursuant to this Interim Order shall be, and hereby are, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

M.     Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     *Approval of Motion.*  The Motion is granted on an interim basis on the terms and conditions set forth in this Interim Order.  Any objections or responses to the relief requested in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

the Motion that have not been previously resolved or withdrawn, waived or settled are hereby overruled on the merits and denied with prejudice or, to the extent applicable, deferred until the Final Hearing.  The rights of all parties in interest to object to entry of a Final Order are hereby reserved.  This Interim Order shall become effective immediately upon its entry.  To the extent that the terms of the DIP Credit Documents differ from the terms of this Interim Order, this Interim Order shall control.

2.      *Authority to Enter Into DIP Term Sheet, Authority Thereunder*.  The Debtors are hereby authorized to enter into the DIP Credit Documents, including the DIP Term Sheet, and such additional documents, instruments and agreements as may be reasonably required by the DIP Lender to implement the terms or effectuate the purposes of this Interim Order.  The Debtors are hereby authorized to borrow money under the DIP Term Sheet, on an interim basis, up to an aggregate principal or face amount not to exceed $1 million, all in accordance with the terms of this Interim Order, the DIP Term Sheet and the other DIP Credit Documents.

3.      *Use of Cash Collateral and DIP Loans*.  The Debtors are hereby authorized to use the Cash Collateral and proceeds of DIP Loans (as defined below) and the DIP Credit Facility solely (i) for the DIP Fees and Expenses (as defined below); (ii) for the fees and expenses of Professional Persons (as defined below); and (iii) to make disbursements in the ordinary course of the Debtors' business and pay for the costs of administering these Cases, in each case in accordance with the Budget (as defined in the DIP Term Sheet), subject to any permitted variances as set forth in the DIP Term Sheet, and the terms, conditions, and procedures set forth in the DIP Term Sheet and this Interim Order.  Any and all of the Debtors' cash on hand as of the Commencement Date shall be deemed used and exhausted prior to the Debtors' use of the proceeds of the DIP Credit Facility, regardless of whether such cash on hand is commingled with such proceeds of the DIP Credit Facility or actually used.

4.      *Payment of DIP Fees and Expenses*.  The Debtors are hereby authorized to pay, in the form of cash, to the DIP Lender all reasonable fees, expenses and other amounts payable under the terms of the DIP Term Sheet, including, without limitation, the Closing Fee, the Unused Line Fee and all reasonable out-of-pocket costs and expenses of the DIP Lender in accordance with

14

the terms of the DIP Term Sheet (including, without limitation, the prepetition and postpetition fees and disbursements of legal counsel, financial advisors and third-party appraisers and consultants advising the DIP Lender) (collectively, the "DIP Fees and Expenses").  Pending further order of the Court, the amount of DIP Fees and Expenses the Debtors are authorized to pay related to legal counsel, financial advisors and third-party appraisers and consultants advising the DIP Lender shall not exceed the amount set forth in the Budget, provided, however, that this payment provision shall not in any way limit the amount of such fees and expenses due and owing to the DIP Lender and all such fees and expenses shall be DIP Obligations.  None of the DIP Fees and Expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the DIP Lender shall submit copies of its professional fee invoices to the Debtors, the U.S. Trustee and the Committee (if appointed), and the Debtors, U.S. Trustee and the Committee shall have ten (10) days from receipt thereof to object in writing to the reasonableness of such invoices; to the extent that the Debtors, U.S. Trustee or the Committee so objects to any such invoices, payment of the disputed portion of such invoices will be subject to review by the Court; provided, further, however, that such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  In addition, the Debtors are hereby authorized to indemnify the DIP Lender against any liability arising in connection with the DIP Credit Documents to the extent set forth in the DIP Credit Documents. All such unpaid fees, expenses and indemnities of the DIP Lender shall constitute DIP Obligations (as defined hereinafter) and the repayment thereof shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP Credit Documents.  The Debtors shall pay the fees and expenses provided for in this paragraph 4 promptly after the foregoing ten (10)-day period.

     5.    *Validity of DIP Credit Documents.*  Upon execution and delivery of the DIP Credit Documents and entry of this Interim Order, the DIP Credit Documents shall automatically

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

constitute valid and binding obligations of the Debtors, enforceable against each Debtor in accordance with the terms thereof. No obligation, payment, transfer or grant of security under the DIP Credit Documents as approved under this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.    *DIP Loans*.  All loans made to or for the benefit of the Debtors on or after the Commencement Date under the DIP Credit Documents (collectively, the "DIP Loans"), all interest thereon and all fees, costs, expenses, indemnification obligations and other liabilities owing by the Debtors to the DIP Lender under the DIP Credit Documents and this Interim Order shall hereinafter be referred to as the "DIP Obligations." The DIP Loans: (a) shall be evidenced by the books and records of the DIP Lender; (b) shall bear interest payable at the rates set forth in the DIP Term Sheet; (c) shall be secured in the manner specified in paragraph 8 below and in the DIP Credit Documents; (d) shall be payable in accordance with the terms of the DIP Credit Documents; and (e) shall otherwise be governed by the terms set forth herein and in the DIP Credit Documents.

7.    *Continuation of Prepetition Liens and Prepetition Liens Securing DIP Obligations*.  Until (a) the Debtors have paid in full all DIP Obligations and all Prepetition Secured Obligations (in each case, other than unasserted contingent indemnification obligations), (b) the DIP Lender's commitments under the DIP Credit Facility have terminated, (c) all objections and challenges to (i) the liens and security interests of the Prepetition Lender (including, without limitation, liens granted for adequate protection purposes) and (ii) the Prepetition Secured Obligations have been waived, denied or barred, and (d) all of the Debtors' stipulations contained in paragraphs E(1), E(2), E(3) and E(4) of this Interim Order (collectively, the "Debtors' Stipulations") have become binding upon their estates and parties in interest in accordance with paragraph 25 below, all liens and security interests of the Prepetition Lender (including, without limitation, liens granted for adequate protection purposes) shall remain valid and enforceable with the same continuing priority as described herein.

8.    *DIP Liens and DIP Collateral*.  As security for the full and timely payment of the DIP Obligations, the DIP Lender is hereby granted, pursuant to sections 364(c)(2), 364(c)(3), and

16

364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable, and fully perfected security interests in and liens and mortgages (collectively, the "DIP Liens") upon all existing and after-acquired tangible and intangible personal and real property and assets of each of the Debtors, wherever located, and all the proceeds and products thereof, and as otherwise described in the DIP Credit Documents (the "DIP Collateral"), which shall (i) constitute first-priority security interests in and liens upon all DIP Collateral that is not otherwise subject to a valid, enforceable, non-avoidable, and fully perfected lien existing as of the Commencement Date (an "Existing Lien"), (ii) be senior to and prime the Prepetition Liens on Prepetition Collateral, (iii) be senior to and prime all Adequate Protection Obligations, and (iv) be subordinate only to the Carve-Out, Permitted Liens and Existing Liens, provided that this Interim Order does not grant, and shall not be deemed to grant, any security interests in or liens on claims and causes of action under chapter 5 of the Bankruptcy Code and similar laws, and any proceeds thereof and property received thereby, whether by judgment, settlement or otherwise (collectively, "Avoidance Actions"), provided, however, that Avoidance Actions shall not include any claims and causes of action under section 549 of the Bankruptcy Code and any proceeds thereof and property received on account thereof, whether by judgment, settlement or otherwise, and all such claims and causes, proceeds and property shall constitute DIP Collateral.

9.     *DIP Lender's Superpriority Claims.*  In addition to the DIP Liens, subject to the Carve-Out and in accordance with sections 364(c)(1), 503 and 507 of the Bankruptcy Code, all of the DIP Obligations (including, without limitation, all DIP Loans) shall constitute allowed superpriority administrative expense claims (the "DIP Superpriority Claims") with priority over any and all administrative expenses of the Debtors, whether heretofore or hereafter incurred, of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, 1114 or any other provisions of the Bankruptcy Code, which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, including (subject to the provisions of the Final Order) Avoidance Actions and all the proceeds and products thereof.

10.     *Adequate Protection for Prepetition Lender.*  Without in any way limiting the Prepetition Lender's rights under the Bankruptcy Code, including, without limitation, section 552 of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

17

the Bankruptcy Code, the Prepetition Lender is entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of its interest in the Cash Collateral for the sale, lease or use by the Debtors of the Prepetition Collateral, for the priming of the Prepetition Liens, and for the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. The Prepetition Lender shall receive and retain all rights and entitlements that a secured creditor that did not consent to the use of its cash collateral or other property or sought relief from the automatic stay and had such request been overruled would otherwise receive and/or retain. In addition, the Prepetition Lender is hereby granted the following:

A. Effective and perfected upon the date of entry of this Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, the Prepetition Lender's Adequate Protection Liens and the Adequate Protection Priority Claims, which shall secure the payment of an amount equal to the diminution in the value of the Prepetition Lender's interests in the Prepetition Collateral from and after the Commencement Date, including, without limitation, any such diminution resulting from: (A) the use by any of the Debtors of such collateral and cash and property constituting proceeds of such collateral, (B) the imposition of those liens granted to the DIP Lender which will prime the Prepetition Lender's Prepetition Liens, (C) the Carve-Out, (D) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code and/or (E) any other reason (the "Adequate Protection Obligations").

B. As additional adequate protection, the Debtors are hereby authorized to pay, in the form of cash, to the Prepetition Lender all reasonable and documented postpetition fees and out-of-pocket expenses of the Prepetition Lender (including, without limitation, the postpetition fees and disbursements of legal counsel, financial advisors and third-party appraisers and consultants advising the Prepetition Lender) (all such payments, the "Adequate Protection Payments"). Pending further order of the Court, the amount of the Adequate Protection Payments the Debtors are authorized to pay related to legal counsel, financial advisors and third-party appraisers and consultants advising the Prepetition Lender

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

18

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

shall not exceed the amount set forth in the Budget, provided, however, that this payment provision shall not in any way limit the amount of such fees and expenses due and owing to the Prepetition Lender and all such fees and expenses shall be Adequate Protection Priority Claims. None of the Adequate Protection Payments shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the Prepetition Lender shall submit copies of its professional fee invoices to the Debtors, the U.S. Trustee and the Committee (if appointed), and the Debtors, U.S. Trustee and the Committee shall have ten (10) days from receipt thereof to object in writing to the reasonableness of such invoices; to the extent that the Debtors, U.S. Trustee or the Committee so objects to any such invoices, payment of the disputed portion of such invoices will be subject to review by the Court; provided, further, however, that such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or any benefits of the attorney work product doctrine. All such unpaid fees and expenses of the Prepetition Lender shall constitute DIP Obligations (as defined hereinafter) and the repayment thereof shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP Credit Documents. The Debtors shall pay the fees and expenses provided for in this paragraph promptly after the foregoing ten (10)-day period.

C.      The consent of the Prepetition Lender to the priming of its liens by the DIP Liens is limited to the DIP Credit Facility presently before the Court and shall not extend to any other postpetition financing or to any modified version of the DIP Credit Facility. Furthermore, the consent of the Prepetition Lender to the priming of its liens by the DIP Liens does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Lender that its interests in the Prepetition Collateral are adequately protected pursuant to this Interim Order or otherwise, and, to the extent of any

19

dispute regarding the payment or entitlement to adequate protection, including adequate protection granted pursuant to this Interim Order, the Debtors shall retain the burden of proof.

11. _Automatic Effectiveness of Liens._ Except as expressly set forth herein (including, without limitation, with respect to the Carve-Out), the liens granted pursuant to this Interim Order shall not be (a) subject to any lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (b) subordinated to or made _pari passu_ with any other lien under sections 363 and 364 of the Bankruptcy Code other than as explicitly provided herein. The DIP Liens and the Adequate Protection Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Commencement Date without any further action by the Debtors, the DIP Lender, the Prepetition Lender, and without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, guaranty agreements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents or the taking of any other actions. All DIP Collateral shall be free and clear of other liens, claims and encumbrances, except the Carve-Out and other Permitted Liens and encumbrances as provided herein, in the DIP Term Sheet and in the Prepetition Documents. If the DIP Lender hereafter requests that the Debtors execute and deliver to the DIP Lender financing statements, guaranty agreements, security agreements, collateral assignments, mortgages or other instruments and documents considered by the DIP Lender to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens, the Debtors are hereby authorized to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments and documents, and the DIP Lender is hereby authorized to file or record such documents in its discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

12. _Carve Out._

(a)     The DIP Collateral, the DIP Liens, the DIP Superpriority Claims, the DIP Obligations, the Adequate Protection Priority Claims, the Adequate Protection Liens, the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Prepetition Secured Obligations, and the Prepetition Collateral shall be subject to the payment of the Carve-Out, whether prior to or following the DIP Lender's issuance of a Carve-Out Trigger Notice (as defined below) or the occurrence of a Cash Collateral Termination Event (as defined below). For purposes of this Interim Order, the "Carve-Out" shall mean, collectively: the sum of (i) all fees required to be paid to the clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and 31 U.S.C. §3717, (ii) accrued, but unpaid post-petition obligations of the Debtors up to the amounts set forth in the Budget (prorated on a daily basis) through the Carve-Out Trigger Date (as defined below), plus any accrued but unpaid prepetition (up to the remaining amount set forth in 11 U.S.C. § 507(a)(4) after payment of any other amounts entitled to priority pursuant to that section) or postpetition paid time off owed to the Debtors' employees as of such date; (iii) the amount of $25,000 in the aggregate (subject to allowance by the Court) for fees and expenses for a subsequently appointed chapter 7 trustee; (iv) allowed professional fees, expenses and disbursements incurred at any time before the Carve-Out Trigger Date, or any monthly fees payable to estate professionals (but not any success or transaction fees), in each case pursuant to the Budget, by persons or firms retained by the Debtors or the Committee (if appointed) whose retention is approved by the Court pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code (collectively, the "Professional Persons," and the fees, costs and expenses of each Professional Person under the Budget, the "Carve-Out Expenses"), to the extent such Carve-Out Expenses are allowed by the Court at any time (i.e., before or after the Carve-Out Trigger Date) on a final basis; and (v) all Carve-Out Expenses incurred on and after the Carve-Out Trigger Date by Professional Persons and allowed by the Court at any time, provided that the payment of any Carve-Out Expenses of the Professional Persons (but excluding fees and expenses of third party professionals employed by individual members of the Committee (if appointed)) incurred on or after the Carve-Out Trigger Date and allowed by the Court at any time, on a final basis, shall not exceed $100,000 in the aggregate for the Debtors' professionals and $50,000 for Committee's professionals (the "Professional Expense Cap"); provided that, any payments actually made in respect of Carve-Out Expenses of the Professional Persons incurred on or after the Carve-Out Trigger Date and allowed by the Court at any time shall reduce the Professional Expense Cap on a dollar-for-dollar basis. For

21

the purposes of the foregoing, "Carve-Out Trigger Date" means the first business day after (A) the occurrence and during the continuance of (x) an Event of Default under the DIP Term Sheet or (y) a default by any Debtor in any of its obligations under any Chapter 11 Order, in each case, unless such Event of Default or default is cured or waived, and (B) delivery of written notice thereof (the "Carve-Out Trigger Notice") by the DIP Lender to (1) the U.S. Trustee, (2) the Debtors and counsel to the Debtors, and (3) counsel to the Committee (or, in the event no Committee has been appointed, to the Listed Top Creditors). For the avoidance of doubt, the Carve-Out shall be senior to any claims arising under or relating to and liens securing the DIP Credit Facility, the Prepetition Secured Obligations, including, without limitation, any administrative or superpriority claims and all forms of adequate protection liens or security interests related to any of the foregoing. In any event, the DIP Lender and the Prepetition Lender reserve the right to review and object to any fee statement, interim application or monthly application issued or filed by estate professionals. Any funding or payment of the Carve-Out shall be added to, and made a part of, the DIP Obligations and adequate protection and shall be otherwise entitled to the protections granted under this Interim Order, the DIP Credit Documents, the Bankruptcy Code, and applicable law.

(b)     Following entry of this Interim Order, so long as the Carve-Out Trigger Date has not occurred, the Debtors shall be authorized to transfer funds to the Pachulski Stang Ziehl & Jones LLP Client Trust Account (the "Expense Reserve Account"), on a weekly basis, in the amounts set forth in the Budget for the payment of the Professional Persons for each such week. Such funds shall be held for the benefit of the Professional Persons, to be applied to the fees and expenses of such Professional Persons that are approved for payment pursuant to one or more orders of this Court. Any fees and expenses payable to the Professional Persons shall be paid first out of the Expense Reserve Account, and all amounts deposited in the Expense Reserve Account shall reduce, on a dollar-for-dollar basis, the Carve-Out. Any excess amounts in the Expense Reserve Account after payment of the Carve-Out Expenses of the Professional Persons shall be distributed to the DIP Lender or the Prepetition Lender.

(c)     Immediately upon delivery of a Carve-Out Trigger Notice, no Cash Collateral, proceeds of the DIP Credit Facility or any other cash of the Debtors shall be applied

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

toward any of the DIP Obligations unless and until the Carve-Out has been fully funded through either the Expense Reserve Account or other segregated account not subject to the control of the DIP Lender or the Prepetition Lender (the "Carve-Out Account"). The Carve-Out Account and the proceeds on deposit in the Carve-Out Account shall be available only to satisfy obligations benefitting from the Carve-Out and shall not constitute DIP Collateral, except that the DIP Lender and Prepetition Lender shall retain security interests in any residual interests in the Carve-Out Account available following satisfaction in full of all obligations benefitting from the Carve-Out, and shall receive distributions on accounts of such residual interests.

13. *Investigation of Prepetition Liens.* The Debtors shall not assert or prosecute, and no portion of the DIP Credit Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with (a) asserting or prosecuting any claims or causes of action against the Prepetition Lender of the DIP Lender, or (b) challenging or raising any defenses to the Prepetition Secured Obligations or the DIP Obligations, or the liens of the Prepetition Lender or the DIP Lender. Notwithstanding the foregoing, (i) the Debtors shall be permitted to contest the occurrence and/or continuance of an Event of Default in accordance with the terms and conditions of this Interim Order and (ii) no more than $10,000 of the proceeds of the DIP Credit Facility or the DIP Collateral or Cash Collateral may be used by the Committee (if appointed) to investigate the prepetition liens and claims of the Prepetition Lender.

14. *Cash Management System.* The cash management system described in the Debtors' motion seeking authorization to use such system (among other relief) or in the DIP Term Sheet (the "Cash Management System") and all accounts established in connection therewith shall be used for the purposes and on the terms and conditions set forth in the DIP Term Sheet and the other DIP Credit Documents. The Debtors and the DIP Lender are further authorized to enter into any additional agreements providing for the establishment of lock boxes, blocked accounts or similar arrangements in favor of the DIP Lender for purposes of facilitating cash collections from the Debtors in accordance with the terms of the DIP Term Sheet, and to give directions and instructions

DOCS_SF:90050.0.99999/001
Case: 16-30296    Doc# 11    Filed: 03/21/16    Entered: 03/21/16 17:43:23    Page 48 of 74

to the depository banks at which the Debtors' bank accounts are maintained (or amend control agreements with such depository banks) in order to direct the Debtors' cash collections to be transferred to a funding account of the Debtors (or, in the case of any enforcement during the occurrence and continuance of any Event of Default hereunder or under the DIP Term Sheet, transferred to the DIP Lender). the DIP Funding Account pursuant to (and as defined in) the DIP Term Sheet.

15. *Insurance*. Upon entry of this Interim Order, the Prepetition Lender and the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral.

16. *Section 506(c) and 552(b) Waivers*. No costs or expenses of administration incurred while the Debtors are authorized to borrow funds or use cash collateral shall be imposed against the DIP Lender or the Prepetition Lender, the DIP Collateral, or the Prepetition Collateral under section 506(c) or 552(b) of the Code or otherwise, and no action or inaction on the part of DIP Lender or the Prepetition Lender shall be deemed to constitute a consent to such surcharge. The Prepetition Lender shall be entitled to all of the rights and benefits of section 552(b) of the Code with respect to the Prepetition Collateral without any limitation pursuant to such section. Neither of the DIP Lender or the Prepetition Lender shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral.

17. *Restrictions on Granting Postpetition Liens*. Except for the Carve-Out, liens and claims otherwise permitted pursuant to the DIP Term Sheet or as expressly set forth in this Interim Order, it shall constitute an Event of Default if any Debtor incurs or requests authority to incur a claim or grants a lien (or a claim or lien is allowed) having a priority superior to or *pari passu* with those granted pursuant to this Interim Order to the DIP Lender or the Prepetition Lender, respectively, at any time during which any portion of the DIP Credit Facility (or any refinancing thereof), the DIP Obligations or the adequate protection obligations owing to the Prepetition Lender remains outstanding.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

24

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1        18.    *Binding Nature of Order; Order Controls.*  The provisions of this Interim

2    Order shall be binding upon the Debtors and their respective successors and assigns (including,

3    without limitation, any trustee or other fiduciary hereafter elected or appointed for or on behalf of

4    any Debtor's estate or with respect to its property).  In the event of any inconsistency between the

5    provisions of this Interim Order and any of the DIP Credit Documents, the provisions of this Interim

6    Order shall govern.

7        19.    *Survival of Order.*  The provisions of this Interim Order and any actions taken

8    pursuant thereto (a) shall survive the entry of any order:  (i) confirming any plan of reorganization in

9    any of the Cases; (ii) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code;

10   or (iii) dismissing any of the Cases; and (b) shall continue in full force and effect notwithstanding

11   the entry of any such order, and the claims, liens, and security interests granted pursuant to this

12   Interim Order shall maintain their priority as provided by this Interim Order until all of the DIP

13   Obligations are indefeasibly paid in full and discharged in accordance with the terms of the DIP

14   Term Sheet.  The DIP Obligations shall not be discharged by the entry of any order confirming any

15   plan of reorganization in any of the Cases, and the Debtors shall, and shall be deemed to, waive any

16   such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

17       20.    *Protection under Section 364(e) of the Bankruptcy Code.*  If any or all of the

18   provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal,

19   modification, vacation or stay shall not affect (i) the validity of any DIP Obligations or adequate

20   protection obligations owing to the DIP Lender and the Prepetition Lender incurred prior to the

21   actual receipt by the DIP Lender or the Prepetition Lender, as applicable, of written notice of the

22   effective date of such reversal, modification, vacatur or stay, or (ii) the validity or enforceability of

23   any claim, lien, security interest or priority authorized or created hereby or pursuant to the DIP

24   Credit Documents with respect to any DIP Obligations or adequate protection rights of the

25   Prepetition Lender.  Notwithstanding any such reversal, modification, vacatur or stay, any use of

26   Cash Collateral or the incurrence of DIP Obligations or adequate protection rights of the Prepetition

27   Lender prior to the actual receipt by the DIP Lender and the Prepetition Lender, as applicable, of

28   written notice of the effective date of such reversal, modification, vacatur or stay, shall be governed

DOCS_SF:90050.9.99999/001

in all respects by the provisions of this Interim Order, and the DIP Lender and the Prepetition Lender shall be entitled to all of the rights, remedies, protections and benefits granted under section 364(e) of the Bankruptcy Code, this Interim Order and the DIP Credit Documents with respect to all uses of Cash Collateral and the incurrence of DIP Obligations and adequate protection obligations owing to the Prepetition Lender.

21.    *Events of Default*.  Except as otherwise provided in this Interim Order or to the extent the DIP Lender may otherwise agree in writing, (a) any occurrence of an "Event of Default" pursuant to the DIP Term Sheet or event or circumstance that otherwise constitutes an event of default in this Order, including but not limited to, compliance with any DIP milestones, shall constitute an event of default hereunder, unless the DIP Lender has waived such default in accordance with the DIP Credit Documents (each, an "Event of Default"), and (b) any event or circumstance that otherwise constitutes an event of default in this Order shall be deemed to be an Event of Default under the DIP Term Sheet.

22.    *Modification of Stay*.  The automatic stay provisions of section 362 of the Bankruptcy Code shall be automatically vacated and modified to the extent necessary to permit the DIP Lender to exercise, upon the occurrence and during the continuation of any Event of Default and upon the DIP Lender providing to the Debtors five (5) business days' written notice of such Event of Default (such five (5)-business day period, the "Remedies Notice Period"), which written notice shall be served by the DIP Lender via electronic mail or facsimile on the Debtors, counsel to the Debtors, counsel to the Committee (or, in the event no Committee has been appointed, to the Listed Top Creditors) and the U.S. Trustee and filed with the Court by counsel to the DIP Lender, any and all rights and remedies provided for in the DIP Credit Documents, and to take any or all of the following actions without further order of or application to this Court, and in the case of (a) and (b) below immediately upon the commencement of the Remedies Notice Period, and in the case of (c) and (d) below following the conclusion of the Remedies Notice Period and in the absence of a determination by the Court that an Event of Default has not occurred or is not continuing: (a) immediately terminate the Debtors' use of Cash Collateral and cease making any DIP Loans to the Debtors; (b) immediately declare all DIP Obligations to be immediately due and payable;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

26

(c) immediately set off any and all amounts in accounts maintained by the Debtors with the DIP Lender against the DIP Obligations, or otherwise enforce rights against the DIP Collateral in the possession of the DIP Lender for application towards the DIP Obligations; and (d) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Credit Documents or applicable law to effect the repayment of the DIP Obligations.  The automatic stay under section 362(a) of the Bankruptcy Code shall be automatically vacated and modified as provided above <u>unless</u> and until the Court has determined that an Event of Default has not occurred or is not continuing.  For the avoidance of doubt, the DIP Lender shall be entitled to exercise the rights and remedies set forth in (a) and (b) above immediately upon commencement of the Remedies Notice Period, and exercise the rights and remedies set forth in (c) and (d) above after expiration of the Remedies Notice Period and in the absence of a determination by the Court before the expiration of the Remedies Notice Period that an Event of Default has not occurred or is not continuing.  Unless ordered by the Court, any party in interest's sole recourse with respect to opposing such modification of the automatic stay under section 362(a) of the Bankruptcy Code shall be to contest the occurrence of an Event of Default or that such Event of Default is not continuing.  During the Remedies Notice Period, the Debtors shall be entitled to (x) use the proceeds of the DIP Credit Facility or the Cash Collateral only with respect to the Carve-Out (in accordance with the procedures set forth herein) and for no other purpose, (y) contest the occurrence and/or continuance of an Event of Default and (z) to seek and obtain an emergency hearing before the Court, with proper notice to the DIP Lender solely for the purpose of contesting whether an Event of Default has occurred or is not continuing.  The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under the DIP Credit Documents or otherwise.  The Each of the Debtors shall cooperate fully with the DIP Lender in their exercise of rights and remedies, whether against the DIP Collateral or otherwise.

23. *Limitations on Borrowings*.  It shall constitute an Event of Default if any of the Debtors obtain authorization from the Court for any of the Debtors or their estates to borrow money (other than in accordance with the DIP Term Sheet) from any person other than the DIP Lender.

DOCS_SF:900509.09999/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

24. *Modifications of DIP Term Sheet and Budgets*. The Debtors are hereby authorized, without further order of this Court, to enter into agreements with the DIP Lender providing for any non-material modifications to the DIP Term Sheet or of any other modifications to the DIP Term Sheet necessary to conform the DIP Term Sheet to this Interim Order; provided, however, that the Debtors shall provide notice of any material modification or amendment to the DIP Term Sheet that is adverse to the Debtors' estates to counsel to the Committee (or, in the event no Committee has been appointed, to the Listed Top Creditors), the U.S. Trustee and the Court, each of whom shall have five (5) days from the date of such notice within which to object in writing to such modification or amendment. If the Committee (or if not appointed, the Listed Top Creditors) or the U.S. Trustee timely objects to any such material modification or amendment to the DIP Term Sheet, such modification or amendment shall only be permitted pursuant to an order of this Court. Further, the Debtors and the DIP Lender may agree to amend, update, or extend the Budget without further notice to creditors or approval of this Court, provided that any such new Budget is provided to counsel to the Committee (or, in the event no Committee has been appointed, to the Listed Top Creditors) and the U.S. Trustee.

25. *Stipulations Regarding Prepetition Obligations and Prepetition Liens Binding on Parties in Interest*. The Debtors' Stipulations shall be binding on the Debtors' estates and all parties in interest, including, without limitation, the Committee (if appointed), unless (a) the Committee (if appointed), or another party in interest (other than any of the Debtors) with standing and requisite authority, has timely commenced a contested matter or adversary proceeding (subject to the limitations set forth in paragraph 13 hereof) (a "Challenge") challenging the amount, validity or enforceability of the Prepetition Secured Obligations, or the perfection or priority of the Prepetition Liens, or otherwise asserting any objections, Claims or causes of action on behalf of the Debtors' estates against the Prepetition Lender relating to the Prepetition Obligations or the Prepetition Liens no later than the earlier of the date that is (X) seventy-five (75) days after the Commencement Date or (Y) sixty (60) days after the appointment of the Committee (if appointed), and (b) to the extent the Court rules in favor of the plaintiff in any such timely and properly filed Challenge. If no such Challenge is timely commenced as of such date then, without further order of

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

the Court, (x) the claims, liens and security interests of the Prepetition Secured Parties shall, without further order of the Court, be deemed to be finally allowed for all purposes in the Cases and any subsequent chapter 7 cases and shall not be subject to challenge or objection by any party in interest as to validity, priority, amount or otherwise, and (y) without further order of the Court, the Debtors and their estates shall be deemed to have released any and all claims or causes of action against the Prepetition Lender with respect to the Prepetition Documents or any related transactions. Notwithstanding anything to the contrary herein, if no Challenge is timely commenced, the Debtors' Stipulations shall be binding on the Debtors' estates, the Committee (if appointed) and all parties in interest. If a Challenge is timely commenced, the Debtors' Stipulations shall be binding on the Debtors' estates and all parties in interest except to the extent such stipulations are specifically challenged in such Challenge as and when originally filed (ignoring any relation back principles). To the extent a Challenge is withdrawn, denied or overruled, the Debtors' Stipulations specifically challenged in such Challenge also shall be binding on the Debtors' estates and all parties in interest. For the avoidance of doubt, any trustee appointed or elected in these Chapter 11 Cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Interim Order

26. *Termination of Commitments and Right to Use Cash Collateral.* All commitments of the DIP Lender and any consent or right of the Debtors to use Cash Collateral shall terminate and all amounts owing under the DIP Credit Facility shall be due and payable, on the earliest to occur of the following events (each, a "Cash Collateral Termination Event" and, collectively, the "Cash Collateral Termination Events"): (a) in the event the Final Order has not been entered by the Court within thirty (30) days after the entry of this Interim Order, (b) in the event the Court declines to enter the Final Order, (c) the effective date of a confirmed plan, (d) subject to the other terms and conditions of this Interim Order, either Debtor's receipt of the Carve-Out Trigger

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 16-30296    Doc# 11    Filed: 03/21/16    Entered: 03/21/16 17:43:23    Page 54 of 74

Notice (which notice shall be delivered to the Debtors, any Committee (or, in the event no Committee has been appointed, to the Listed Top Creditors) and the U.S. Trustee and may be delivered by facsimile or other electronic means of communication), (e) the payment in full in cash of the DIP Obligations and the Prepetition Secured Obligations, and (f) as otherwise provided in the DIP Term Sheet; provided that the Cash Collateral Termination Events set forth in the immediately preceding clause (d) shall be subject to the Remedies Notice Period.

27. *Master Proof of Claim*. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases to the contrary, the Prepetition Lender will not be required to file proofs of claim in any of the Cases or any successor cases for any claims arising under the Debtors' Stipulations, the Prepetition Documents, and such stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition Lender with regard to all claims arising under the Prepetition Credit Documents. Notwithstanding the foregoing, the Prepetition Lender is authorized and entitled, in its sole discretion, but is not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or proofs of claim in each of the Cases for any claim described herein.

28. *Final Hearing*. The Final Hearing is scheduled for [_____] [__], 2016, at __:00 _.m. (prevailing Pacific Time) before this Court. Any objections by creditors or other parties in interest to any provisions of this Interim Order must be timely filed and served in accordance with this paragraph 28. The Debtors shall promptly serve notice of entry of this Interim Order and the Final Hearing on the appropriate parties in interest in accordance with the Federal Rules of Bankruptcy Procedures and any applicable local rules. Without limiting the foregoing, the Debtors shall promptly serve a notice of entry of this Interim Order and the Final Hearing, together with a copy of this Interim Order, by first class mail, postage prepaid, facsimile, electronic mail or overnight mail upon the Notice Parties. The notice of the entry of this Interim Order and the Final Hearing shall state that objections to the entry of a Final Order shall be filed with the United States Bankruptcy Court for the Northern District of California by no later than 4:00 p.m. (prevailing Pacific Time) on [_____] [__], 2016 (the "Objection Deadline"). The continued availability of the DIP Credit Facility shall be subject to the entry in the Cases, not later than the earlier of thirty

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

30

(30) days after the entry of this Interim Order of a Final Order, following proper notice and hearing thereon, which is in all respects reasonably satisfactory to the DIP Lender and the Prepetition Lender.

Dated: _____, 2016

_____
UNITED STATES BANKRUPTCY JUDGE

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

31

# EXHIBIT A

# DEBTOR-IN-POSSESSION TERM SHEET

This Term Sheet, together with the interim order of the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**") authorizing, on an interim basis, the transactions contemplated in this Term Sheet and the other Loan Documents in form and substance satisfactory to the Lender (the "**Interim Order**") and the final order of the Bankruptcy Court authorizing, on a final basis, the transactions contemplated in this Term Sheet and the other Loan Documents in form and substance satisfactory to the Lender (the "**Final Order** " and together with the Interim Order, collectively, the "**Orders**"), sets forth the terms and conditions of the Debtor-In-Possession Credit Facility (the "**DIP Facility**") to be provided by Jackson Investment Group, LLC ("**Lender**") to the Borrowers.  Capitalized terms used herein and not defined herein shall have meaning specified in the Orders.

| | | |
|---|---|---|
| **1.** | **Borrowers:** | Blue Earth, Inc. ("**Blue Earth**") and Blue Earth Tech, Inc. ("**BE Tech**" and collectively, the "**Borrowers**" or "**Debtors**"), each a Nevada corporation and a debtor and debtor in possession in the Cases. Borrowers' obligations shall be joint and several. |
| **2.** | **DIP Facility Amount:** | Up to $3,000,000 (the "**Commitment**"). To be made as a term loan available in one or more advances on and after the closing date and prior to the Termination Date (the "**Term Loan**"), subject to satisfaction of conditions precedent. No portion of the Term Loan may be reborrowed once repaid. |
| **3.** | **DIP Facility Termination Date/ Repayment:** | The DIP Facility shall terminate (the "**Termination Date**") on the earlier of (a) the 125th day after the Petition Date, (b) the acceleration of the Term Loan as result of any Event of Default, and (c) as otherwise provided in one or both Orders.  On the Termination Date, Lender shall have no further obligation to make any advances under the DIP Facility, and all outstanding Obligations shall immediately become due and payable by Borrowers to Lender. |
| **4.** | **Closing Date:** | The first initial funding date, subject to the conditions precedent set forth below (the "**Closing Date**"). |
| **5.** | **Use of Proceeds:** | Proceeds to be used solely for: (a) working capital and general corporate purposes of Borrowers consistent with the Approved Budget and to pay the costs and expenses related to the administration of the Cases; and (b) if necessary, the initial advance will be used to pay amounts specified in a funds flow memorandum to be attached to the initial notice of borrowing, which funds flow must be consistent with the Approved Budget and satisfactory to Lender. |
| **6.** | **Interest Rate:** | Interest shall accrue on all outstanding advances at a rate per annum equal to 9%, and shall be payable in arrears on the last business day of each month on and after the Closing Date and on the Termination Date and such interest shall be included in the Approved Budget and be paid from the proceeds of the Term Loan. |
| **7.** | **Default Rate:** | 11% per annum. The Default Rate shall automatically accrue from and after the occurrence and continuance of any Event of Default or event or condition that constitutes an Event of Default or that, with |

Case: 16-30296   Doc# 11   Filed: 03/21/16   Entered: 03/21/16 17:43:23   Page 58 of 74

the giving of notice, the passage of applicable grace periods, or both, would be an Event of Default (a "**Default**").

| | | |
|---|---|---|
| 8. | **Fees:** | Borrowers shall pay to Lender (a) on the Closing Date and on the date of any subsequent advances, a closing fee equal to 2% of the principal amount of each such advance, (b) an unused line fee, which shall accrue at the per annum rate of 0.50% on the daily undrawn portion of the DIP Facility and shall be payable in arrears on each required interest payment date; and (c) all other fees and expenses of Lender as set forth herein.  All such fees shall be deemed fully earned when due and shall be non-refundable and such fees shall be included in the Approved Budget and be paid from the proceeds of the Term Loan. |
| 9. | **Voluntary Prepayments:** | Voluntary prepayments of the DIP Facility are permitted at any time, without premium or penalty. |
| 10. | **Mandatory Prepayments:** | Not later than 5 business days after receipt by any Borrower of any cash proceeds (net of reasonable and customary fees and expenses relating thereto) in respect of any asset disposition, casualty event, condemnation, debt issuance or equity issuance by any Borrower or any direct or indirect subsidiary of any Borrower (individually a "**Subsidiary**" and, collectively, the "**Subsidiaries**"), Borrowers shall prepay the Obligations in an amount equal to 100% of such net cash proceeds. |
| 11. | **Priority and Liens:** | All obligations of Borrowers to Lender under the DIP Facility, including, without limitation the principal amount of all advances by Lender to Borrowers, all accrued and unpaid interest thereon, all accrued fees owed by Borrowers to Lender hereunder, and all other amounts now or hereafter owing by the Borrowers to the Lender hereunder or under the Orders (collectively, the "**Obligations**"), shall at all times be secured by and have benefit of (a) the liens, security interests and the claim status provided for in the Orders, having the priority set forth in the Orders and (b) the first priority liens and security interests granted pursuant to the Orders (subject to the exceptions set forth therein including the Carve-Out). |
| 12. | **Collateral** | Subject to the Orders, all of the real and personal property of the Debtors of any description whatsoever, wherever located and whenever arising or acquired, including all cash proceeds, accounts, inventory, equipment, fixtures, chattel paper, general intangibles, claims and causes of action under 11 U.S.C. § 549 and any proceeds and property received on account thereof, all leases and leaseholds, and all other assets, and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing. |
| 13. | **Approved Budget** | Borrowers shall provide a 13-week budget on a weekly basis to Lender on or before the Closing Date in the form attached hereto as <u>Exhibit A</u> (the "**Initial Budget**").  By no later than Monday on each calendar week following the Closing Date, Borrowers shall provide |

Case: 16-30296   Doc# 11   Filed: 03/21/16   Entered: 03/21/16 17:43:23   Page 59 of 74

Lender with weekly updates and extensions of the Initial Budget in substantially the same form (including the assumptions and methodology made or used therein) as the Initial Budget covering the following 13-week period, along with budget to actual performance for the prior weeks, each such update and extension must be in form and substance satisfactory to Lender, provided, that all disbursements shall be made pursuant to the Initial Budget unless otherwise agreed to by Lender and Borrowers. The Initial Budget, and any subsequent budget agreed to by the Borrowers and the Lender from time to time, is referred to herein as the "**Approved Budget**". The Borrowers shall not make any disbursements other than those set forth in the Approved Budget; provided, however that the disbursements may exceed the amounts set forth in the Approved Budget (a) for any line-itemed expense (a "**Line-Itemed Expense**") by no more than 10% in respect of such Line-Itemed Expense and (b) in any event, and not to exceed the Commitment, no more than 5% in respect of the aggregate amounts set forth in the Approved Budget based on each consecutive non-overlapping 4 week post-petition period.

| | |
|---|---|
| **14. Conditions Precedent to an Initial DIP Facility Advance:** | The funding of an initial advance under the DIP Facility (which advances shall not exceed in the aggregate the lesser of (i) $1,000,000 and (ii) the amount permitted under the Interim Order) is subject, in each case, to satisfaction of the following conditions, each in form and substance satisfactory to Lender (unless waived in writing by Lender): (a) Lender shall have received duly executed counterparts from each party thereto of this Term Sheet and any other collateral document, instrument or agreement as Lender may deem necessary or advisable to consummate the transactions contemplated hereby, executed by each Borrower in favor of Lender; (b) all reasonable costs, fees and expenses due and payable to Lender (including all reasonable fees and expenses of counsel to Lender and Lender's financial advisor) shall have been paid (to be paid out of the proceeds of the initial advance of the Term Loan); (c) Lender shall have received financial forecasts and other financial information as requested by Lender and the Initial Budget; (d) Lender shall be reasonably satisfied with the form and substance of the "first day orders" (including a cash management order) in the Cases, and the Interim Order shall be in full force and effect, and shall not have been stayed, reversed or vacated, or modified or amended in a manner that Lender reasonably determines is adverse in any material respect to its interests (and no later than 3 calendar days following the Borrowers' bankruptcy petition date (the "**Petition Date**"), the Bankruptcy Court shall have entered the Interim Order in form and substance satisfactory to Lender in its sole discretion); (e) no trustee or examiner shall have been appointed with respect to any of the Borrowers or any Subsidiary or their respective properties; (f) Lender shall be satisfied, in its sole discretion, with the cash management arrangements of the Borrowers and received any required deposit |

3

account control agreements executed by depository bank and applicable Borrower as required by Lender; (g) Borrowers shall have delivered to Lender a notice of borrowing, which shall include a funds flow memorandum; (h) the representations and warranties of the Borrowers as set forth in this Term Sheet and in any other document, agreement or instruments now or hereafter executed by either Borrower in favor of Lender in connection with the DIP Facility (such referenced documents collectively, the "**Loan Documents**") shall be true and correct as of such date; (i) no Default or Event of Default exists; (j) Lender shall have received certificates of insurance naming Lender as loss payee and additional insured with respect to all property and casualty and liability insurance policies of the Borrowers; (k) the Borrowers shall be in compliance in all respects with the Approved Budget; (l) the amount of an initial advance (or the applicable portion thereof designated to be applied to any Line-Itemed Expense) shall not exceed the total amount set forth in the Approved Budget for such Line-Itemed Expenses (subject to the provisions of the section "**Approved Budget**") for the applicable calendar week period; (m) initial advances shall be made no more frequently than once per calendar week; and (n) Lender shall be satisfied in its discretion that any investigation whether commenced presently or in the future by any governmental or regulatory unit has not caused and could not reasonably be expected to cause a material adverse effect on the business, assets, liabilities, prospects, operations, results of operations, or condition (financial or otherwise) of either Borrower.

**15. Conditions Precedent to each Additional DIP Facility Advance:** Lender's funding of any additional advances (which additional advances shall not exceed in the aggregate the lesser of (i) $2,000,000 and (ii) the amount permitted under the Final Order) after the initial advances under the DIP Facility is subject, in each case, to the following conditions precedent, each in form and substance satisfactory to Lender (unless waived in writing by Lender): (a) all of the conditions precedent to the initial advances under the DIP Facility as set forth above shall have been satisfied (or waived in writing by Lender), (b) the Borrowers shall be in compliance in all respects with the Approved Budget and Lender shall have received all required updates thereto subject to the provisions of the section "**Approved Budget**"; (c) the proposed additional advance shall be (1) in an amount necessary to finance the Borrowers' expenses and disbursements in accordance with the Approved Budget and (2) used to pay one or more Line-Itemed Expense, and with respect to any such Line-Itemed Expense, the amount of an additional advance (or the applicable portion thereof designated to be applied to such Line-Itemed Expense) shall not exceed the total amount set forth in the Approved Budget for such Line-Itemed Expense (subject to the provisions of the section "**Approved Budget**") for the applicable calendar week period; (d) Borrowers shall have delivered to Lender,

4

an appropriate notice of borrowing, duly executed and completed; (e) the representations and warranties of the Borrowers as set forth herein and in the other Loan Documents shall be true and correct as of such date; (f) no Default or Event of Default shall exist; (g) the Bankruptcy Court shall have entered the Final Order, and the Final Order shall be in full force and effect, and shall not have been stayed, reversed or vacated, or modified or amended in a manner that Lender reasonably determines is adverse in any material respect to the interests of Lender and, after giving effect to the proposed additional advance, the aggregate principal amount of the outstanding Term Loan shall not exceed the amount authorized by the Final Order; (h) the Borrowers shall be in compliance in all material respects with the Orders and with any applicable cash management order of the Bankruptcy Court; (i) since the Closing Date, no event, circumstance or change shall have occurred that has caused or could reasonably be expected to cause, either in any case or in the aggregate, a material adverse effect ("**Material Adverse Effect**") on the business, assets, liabilities, prospects, operations, results of operations, or condition (financial or otherwise) of either Borrower or any Subsidiary (other than as customarily occurs as a result of events leading up to and following the commencement of a proceeding under chapter 11 of the Bankruptcy Code and the commencement of the Cases and the continuation and prosecution thereof), or the ability of either Borrower to perform their respective obligations under any Loan Document or on the validity or enforceability of any the Loan Document or the rights and remedies of Lender thereunder; (j) no trustee or examiner shall have been appointed with respect to either Borrower or any Subsidiary or their respective properties; (k) the following milestones (the "**Milestones**") shall have been achieved by Borrowers: (1) a plan of reorganization in form and substance acceptable to the Lender for the Debtors (the "**Plan of Reorganization**") shall have been filed with the Bankruptcy Court no later than 30 days after the Petition Date, (2) a disclosure statement in form and substance acceptable to the Lender in respect of the Plan of Reorganization shall have been approved by an order of the Bankruptcy Court in form and substance acceptable to Lender no later than 75 days after the Petition Date, (3) the Plan of Reorganization shall have been confirmed by an order of the Bankruptcy Court in form and substance acceptable to Lender no later than 120 days after the Petition Date and (4) the effective date of the Plan of Reorganization shall have occurred no later than 125 days after the Petition Date; (l) all reasonable costs, fees and expenses due and payable to Lender (including all fees and expenses of counsel to Lender and Lender's financial advisor) shall have been paid consistent with the DIP Order; (m) Lender shall have received duly executed counterparts from each Borrower and each Subsidiary (other than (x) Maili PV 01, LLC, a Hawaii limited liability company and (y) Sumter Heat and Power, LLC, a Nevada limited liability

5

company) of a pledge and security agreement in form satisfactory to Lender by no later than the date of entry of the Final Order; (n) additional advances shall be made no more frequently than once per calendar week; and (o) Lender shall be satisfied in its discretion that any investigation whether commenced presently or in the future by any governmental or regulatory unit has not caused and could not reasonably be expected to cause a material adverse effect on the business, assets, liabilities, prospects, operations, results of operations, or condition (financial or otherwise) of either Borrower.

**16. Representations and Warranties:** Each of the Borrowers represents and warrants to Lender on the Closing Date and as of each advance under the DIP Facility that: (a) each of the Borrowers is validly existing and in good standing; (b) subject to the entry of the Orders, each of the Borrowers has the power and authority to enter into the Loan Documents; (c) subject to the entry of the Orders, each of the Loan Documents to which it is a party constitutes the legal, valid and binding obligations of such Borrower, enforceable against it in accordance with its terms; and (d) each of the representations and warranties in the other Loan Documents are true, complete and correct.

**17. Affirmative Covenants:** Each of the Borrowers covenants and agrees with Lender that: (a) within 30 days after the end of each fiscal month (commencing with the fiscal month of March 2016), Borrowers shall deliver financial statements to Lender in a form and substance satisfactory to Lender; (b) Borrowers shall deliver the weekly updates to the Approved Budget as required herein, together with a variance report, in each case in form, scope and substance satisfactory to Lender; (c) Borrowers will promptly notify Lender of the occurrence of (1) any Default or Event of Default, any breach or default under any material post-petition contractual obligation of Borrowers or any of its Subsidiaries, (2) any dispute, litigation, investigation, proceeding or suspension between Borrowers or any of its Subsidiaries and any governmental authority, (3) the commencement of, or any material adverse development in, any litigation or proceeding affecting Blue Earth or any of its Subsidiaries, including pursuant to any applicable environmental law, (4) any litigation, investigation or proceeding affecting either Borrower or any Subsidiary; (d) each Borrower shall pay and discharge all material post-petition taxes, assessments and other governmental charges or levies imposed upon it, or upon its income or profits, or upon any of its properties, before they shall become more than 90 days delinquent, (e) each Borrower shall preserve, renew and maintain in full force and effect its legal existence and good standing under the laws of the jurisdiction of its organization; (f) each Borrower shall take all reasonable action to maintain all rights, privileges, permits, licenses and franchises necessary in the normal conduct of its business; (g) each Borrower shall maintain, preserve and protect all of its material properties and

6

equipment necessary in the operation of its business in good working order and condition, ordinary wear and tear excepted; (h) each Borrower shall maintain in full force and effect insurance (including worker's compensation insurance, liability insurance, casualty insurance and business interruption insurance) in such amounts, covering such risk and liabilities and with such deductibles or self-insurance retentions as are customary for similar entities, businesses and industries as those of the Borrowers, and not later than 30 days following the Closing Date, Lender, shall be named as loss payees or mortgagees, as its interest may appear, with respect to all such policies; (i) each Borrower shall comply in all material respects with all requirements of law; (j) each Borrower shall maintain all employee benefit, retirement, pension and welfare plans (collectively, the "**Plans**") and cause such plans to comply with and be qualified under applicable law and make all required contributions to any such Plan subject to Section 412 of the IRS Code and make all required contributions to multiemployer plans; (k) each Borrower shall ensure that there are no unfunded liabilities in respect of any Plan in excess of $50,000 unless the aggregate amount of such unfunded liabilities in respect of such Plan is reduced below the $50,000 within a 30-day period; (l) each Borrower shall make all contributions to such Plans required to be made in accordance with all applicable laws; (m) each Borrower shall keep books and records of its transactions that are complete and accurate in all material respects in accordance with GAAP (including the establishment and maintenance of appropriate reserves); (n) each Borrower shall permit representatives and independent contractors of Lender to visit and inspect any of its properties, to examine its corporate, financial and operating records, and make copies thereof or abstracts therefrom, and to discuss its affairs, finances and accounts with its directors, officers, and independent public accountants (and each Borrower hereby authorizes, and Blue Earth shall cause each Subsidiary to authorize, such independent accountants to discuss its affairs, finances and accounts with Lender or any representative or independent contractor thereof; (o) neither Borrower nor any Subsidiary shall at any time on or after the Closing Date (1) form, acquire or create any new subsidiary or (2) acquire any real property; and (p) upon request by Lender, shall cause each of its lockboxes, deposit accounts and securities accounts to be subject to an account control agreement, in form and substance reasonably satisfactory to Lender, properly executed by such Borrower, the applicable bank or other financial institution at which such lockbox or account is maintained. The Borrowers further covenant and agree to cause each of their Subsidiaries to comply with the Affirmative Covenants in clauses (d) through (o), inclusive, above.

**18. Negative Covenants:**   Each of the Borrowers hereby further covenant and agree that it shall not, nor shall it permit any of their Subsidiaries, to directly or indirectly do any of the following: (a) incur, create, assume or permit

7

to exist any indebtedness except for (1) any indebtedness that was incurred prior to the Closing Date and disclosed to Lender pursuant to a written schedule delivered by Borrowers to Lender prior to the Closing Date, in form and substance satisfactory to Lender (collectively, the "**Pre-Petition Indebtedness**") and (2) ordinary course trade payables not overdue by more than 90 days and other amounts set forth in the Approved Budget subject to the provisions of the section "**Approved Budget**"; (b) create, incur, assume or permit to exist any lien on any of its property or assets now owned or hereafter acquired by it except as disclosed and consented to in writing by the Lender prior to the Closing Date, in form and substance satisfactory to Lender; (c) alter in any material respect the character or conduct of the business conducted by it as of the Closing Date; (d) enter into any transaction of merger or consolidation or liquidate, wind up or dissolve itself or its affairs (or suffer any liquidations or dissolutions); (e) sell, transfer or dispose of any of its assets or properties, except the sale of inventory in the ordinary course of business and the disposition of obsolete or worn-out equipment in the ordinary course of business, except as approved by the Bankruptcy Court; (f) hold, make or acquire, any investment (whether in the form of loans to, capital contributions in, or any other investments in or to any natural person, business form, government authority or other entity (a "**Person**") or in any securities issued by any other Person), in any Person, except for any investments made prior to the Closing Date and disclosed to Lender pursuant to a written schedule delivered by Borrowers to Lender prior to the Closing Date, in form and substance satisfactory to Lender; (g) declare, make or pay any dividend, distribution or payment, or purchase, redeem or retire (or set aside for the purchase, redemption or retirement), any outstanding equity interest (including, without limitation, any common or preferred equity interests or units, and any options and warrants) of any Borrower or any Subsidiary, except for non-cash dividends payable solely in stock and for dividends and distributions payable to Borrowers; (h) amend or modify any of the terms, agreements, covenants or conditions applicable to any document, instrument or agreement evidencing any Pre-Petition Indebtedness; (i) redeem, purchase, prepay, retire, defease or otherwise acquire for value, prior to scheduled maturity, scheduled repayment or scheduled sinking fund payment, any Pre-Petition Indebtedness, or set aside any funds for such purpose, except as expressly provided for in the "first day" orders of the Bankruptcy Court entered upon pleadings in the form and substance acceptable to the Lender; (j) engage in any transaction or series of transactions with any officer, director, holder or affiliate of either Borrower or any Subsidiary, other than transactions which are engaged in by Blue Earth or any of its Subsidiaries in the ordinary course of its business on terms and conditions as favorable to such Person as would be obtainable by it in a comparable arms'-length transaction with an

8

independent, unrelated third party; (k) change its fiscal year or make any changes in its accounting treatment and reporting policies, except as required by GAAP, or enter into any amendment, modification or waiver to its articles or certificate of incorporation, bylaws (or analogous organizational documents), in each case as in effect on the Closing Date; (l) create or permit to exist any encumbrance or restriction on the ability of either Borrower or any Subsidiary to (1) make restricted payments to or pay any Pre-Petition Indebtedness owed to any of the Borrowers or any Subsidiary, (2) make loans or advances to any other Borrower or any Subsidiary, (3) transfer any of its properties or assets to any Borrower or any Subsidiary, (4) act as a borrower or guarantor hereunder and grant liens in favor of Lender to secure the Obligations, except for (A) restrictions set forth in this Term Sheet for the benefit of Lender, and prohibitions or restrictions existing under or by reason of any document or other agreement evidencing the Pre-Petition Indebtedness that was entered into prior to the Closing Date; and (B) applicable law; (m) issue equity interests to any Person; (n) acquire any subsidiary; and (o) incur, create, assume, suffer to exist or permit any other superpriority claim which is pari passu with or senior to the claims of the Lender against the Borrowers in respect of the DIP Facility, except for the Carve-Out.

**19. Events of Default:**

An Event of Default shall exist upon the occurrence of any of the following specified events or conditions (each an "**Event of Default**" and collectively, "**Events of Default**"): (a) any Obligations fail to be paid when due, including without limitation, any principal, interest or fees in respect of the DIP Facility; (b) any representation or warranty of any Borrower is found to be materially incorrect when made; (c) any material breach by any Borrower of any affirmative, negative or financial covenant; (d) any post-petition judgment (excluding a judgment in favor of TCA or Laird Q. Cagan) is rendered against any Borrower or any Subsidiary in excess of $100,000 and not stayed or dismissed within 30 days; (e) any Borrower or any Subsidiary is enjoined from conducting any material portion of its business; (f) any Borrower or any Subsidiary suffers a material disruption of business operations or material damage to or a loss of its assets; (g) either Case (1) converts to a case under Chapter 7 of the Bankruptcy Code or (2) is dismissed; (h) a Chapter 11 trustee or an examiner with expanded powers in appointed in either Case; (i) any super priority administrative expense claim or any lien is granted (other than in favor of the holders of Prepetition Indebtedness as set forth above and except for the Carve-Out) which is pari passu with or senior to those of Prepetition or DIP Lender; (j) any pre-petition debt is paid (other than as provided herein and other than (1) payments under First Day Orders acceptable to Lender, and (2) payments as may be approved by the Bankruptcy Court that are reasonably acceptable to Lender); (k) the Bankruptcy Court enters an order granting relief from the automatic stay sufficient to permit foreclosure of security interests in

9

assets of Borrowers of a value in excess of $75,000; (l) an order terminating exclusivity has been entered (or requested, unless actively contested by Borrowers); (m) any Milestone is not timely achieved; (n) the Bankruptcy Court fails to enter, within 30 days following the entry of the Interim Order, the Final Order in respect of the matters covered by the Interim Order and that also permits the extensions of credit under the DIP Facility in form and substance satisfactory to Lender or there occurs any reversal, revocation or modification without the consent of Lender of such order or any other order of the Bankruptcy Court with respect to the Cases and affecting the DIP Facility; or (o) the consummation of a sale, transfer or disposition of all or substantially all of the assets of either Debtors or any Subsidiary thereof (including, without limitation a sale, transfer or disposition (x) of the equity interests of any Subsidiary of Blue Earth (y) pursuant to any merger or consolidation transaction), except to the extent that such sale, disposition or transfer has been consented to in writing by the Lender.

**20. Remedies:** Subject to any limitation in the Order, upon the occurrence and continuance of an Event of Default, Lender shall have the right to: (a) declare the Commitment terminated whereupon the Commitment shall be immediately terminated and Lender shall be under no obligation to fund the Term Loan; (b) declare the unpaid principal of and any accrued interest and fees in respect of the Term Loan and any and all other Obligations of any and every kind (other than contingent indemnification obligations) to be due whereupon the same shall be immediately due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby waived by the Borrowers; and (c) enforce any and all rights and interests created and existing under the Loan Documents, and under applicable law, including, without limitation, any and all rights and remedies existing under the Loan Documents, any and all rights and remedies against any Borrower or all or any part of the collateral securing the DIP Facility (including any cash collateral, whether by foreclosure, setoff or otherwise), and all other rights and remedies available under applicable law.

**21. Expenses:** Borrowers shall be responsible for all reasonable fees, costs and expenses of Lender including all reasonable fees and expenses of Lender's counsel and professional advisors and shall reimburse such amounts promptly upon demand consistent with the DIP Order.

**22. Indemnification:** Borrowers, jointly and severally, shall indemnify Lender (and any sub-agent thereof) and each director, officer, employee, agent, attorney, advisor and other related party (solely in its capacity as such) of any of the foregoing Persons (each such Person being called an "**Indemnitee**") against, and hold each Indemnitee harmless from, any and all actual losses, claims, damages, liabilities and related expenses (including the reasonable fees, charges and disbursements

10

of counsel and professional advisors of the Lender), incurred by any Indemnitee or asserted against any Indemnitee by any third party or by Borrowers or any other Borrower arising out of, in connection with, or as a result of (a) the execution or delivery of the Loan Documents or any agreement or instrument contemplated thereby, the performance by the parties hereto of their obligations thereunder, or the consummation of the transactions contemplated thereby, (b) the use or proposed use of the proceeds from the Term Loan, (c) any environmental liability related to any Borrower or any Subsidiary, or (d) any actual or prospective claim, litigation, investigation or proceeding relating to the DIP Facility, the Loan Documents or the transactions contemplated hereby or by the Orders brought by a third party or by Borrowers or any Subsidiary, and regardless of whether any Indemnitee is a party thereto; provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence, bad faith or willful misconduct of such Indemnitee or a related party (solely in its capacity as such) thereof.

| | |
|---|---|
| **23. Interest Rate Limitation:** | Notwithstanding anything to the contrary contained in any Loan Document, the interest paid or agreed to be paid under the Loan Documents shall not exceed the maximum rate of non-usurious interest permitted by applicable law, and if Lender shall receive interest in an amount that exceeds the maximum rate permitted by law, the excess interest shall be applied to repay the principal of the Term Loan or, if it exceeds such unpaid principal, refunded to Borrowers. |
| **24. Severability:** | If any provision of this Term Sheet or the other Loan Documents is held to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining provisions of this Term Sheet and the other Loan Documents shall not be affected or impaired thereby. |
| **25. Governing Law:** | The internal laws of the State of New York (including, without limitation, Section 5-1401 of the General Obligations law of the State of New York) and, to the extent applicable, the Bankruptcy Code. |
| **26. Submission to Jurisdiction:** | Each Borrower irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of the Bankruptcy Court and, if the Bankruptcy Court does not have (or abstains from) jurisdiction, to the nonexclusive jurisdiction of the courts of the State of New York sitting in New York county and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, in any action or proceeding arising out of or relating to the DIP Facility or any Loan Document. |
| **27. Waiver of Venue:** | Each Borrower irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may not or |

11

hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Term Sheet or any other Loan Document in any court referred to the Section "**Submission to Jurisdiction**". Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

**28. Waiver of Jury Trial:** Each Borrower and Lender hereby irrevocably waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising out of or relating to the DIP Facility, this Term Sheet or any other Loan Document or the transactions contemplated hereby or thereby (whether based on contract, tort or any other theory).

**29. Notices:** Any notices, consents, waivers or other communications required or permitted to be given under the terms of this Agreement must be in writing and will be deemed to have been delivered: (a) upon receipt, when delivered personally; (b) upon receipt, when sent by facsimile or email (provided, confirmation of transmission is mechanically or electronically generated and kept on file by the sending party); or (c) one Business Day after deposit with an overnight courier service, in each case properly addressed to the party to receive the same. The notice information for each party is set forth on this signature page to this Term Sheet.

**30. Assignments:** This Term Sheet and the other Loan Documents shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, except that neither Borrower may assign or otherwise transfer any of its rights or obligations hereunder or thereunder without the prior written consent of Lender. Lender may freely assign any or all of its rights or obligations hereunder or in any other Loan Document without notice to or consent from either Borrower.

IN WITNESS WHEREOF, intending to be legally bound, the parties hereto have duly executed this Term Sheet by their respective authorized officers as of this 21st day of March, 2016.

Case: 16-30296    Doc# 11    Filed: 03/21/16    Entered: 03/21/16 17:43:23    Page 69 of 74

**BLUE EARTH, INC., a Nevada corporation
and a debtor and debtor-in-possession, as a
Borrower**

By: _____
Name: G. Robert Powell
Title: Chief Executive Officer
Address:
235 Pine Street
Suite 1100
San Francisco, California 94104
Attention: G. Robert Powell
E-mail: bob@blueearthinc.com
Fax:

With a copy to:
Jeff Pomerantz, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA  90067-4003
E-mail: jpomerantz@pszjlaw.com
Fax: 310-201-0760

**BLUE EARTH TECH, INC., a Nevada
corporation and a debtor and debtor-in-
possession, as a Borrower**

By: _____
Name: G. Robert Powell
Title: President
Address:
235 Pine Street
Suite 1100
San Francisco, California 94104
Attention: G. Robert Powell
E-mail: bob@blueearthinc.com
Fax:

With a copy to:
Jeff Pomerantz, Esq.
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA  90067-4003
E-mail: jpomerantz@pszjlaw.com
Fax: 310-201-0760

**JACKSON INVESTMENT GROUP, LLC,
as the Lender**

By: _____
Name:  Dennis J. Stockwell
Title:    General Counsel
Address:
Jackson Investment Group, LLC
2655 Northwinds Parkway
Alpharetta, Georgia 30009
Jackson Healthcare
E-mail: dstockwell@jacksonhealthcare.com
Fax: 678-658-4521

With a copy to:
Todd C. Meyers, Esq.
Kilpatrick Townsend & Stockton LLP
Suite 2800
1100 Peachtree Street NE
Atlanta, GA 30309-4528
E-mail: tmeyers@kilpatricktownsend.com
Fax: 404-541-3307

13

**EXHIBIT A**

**INITIAL BUDGET**

15

## Blue Earth Inc. & Blue Earth Tech Inc., Cash Flow Budget

**Blue Earth Inc. and Blue Earth Tech Cash Flow Budget**

| | 3/21/2016 | 3/28/2016 | 4/4/2016 | 4/11/2016 | 4/18/2016 | 4/25/2016 | 5/2/2016 | 5/9/2016 | 5/16/2016 | 5/23/2016 | 5/30/2016 | 6/6/2016 | 6/13/2016 | 6/20/2016 | 6/27/2016 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Begin / End | 3/25/2016 | 4/1/2016 | 4/8/2016 | 4/15/2016 | 4/22/2016 | 4/29/2016 | 5/6/2016 | 5/13/2016 | 5/20/2016 | 5/27/2016 | 6/3/2016 | 6/10/2016 | 6/17/2016 | 6/24/2016 | 7/1/2016 | |
| Beginning Cash | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Expected Receipts | | | | | | | | | | | | | | | | |
| **Overhead Disbursements** | | | | | | | | | | | | | | | | |
| Building Rent | | | | 15,084 | | | | 15,084 | | | | 15,084 | | | | 45,252 |
| Total Utilities | 2,500 | 2,000 | - | 2,621 | - | 2,000 | - | 2,621 | - | 2,000 | - | 2,621 | - | 2,000 | - | 18,363 |
| Other Office | 200 | 200 | 200 | 700 | 200 | 200 | 200 | 700 | 200 | 200 | 200 | 700 | 200 | 200 | 200 | 4,500 |
| Insurance | | | | 72,482 | | | | | | | | | | | | 72,482 |
| Travel | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 135,000 |
| Licenses | | | | | | | | | | | | | | | | - |
| Consultants | 1,000 | 5,000 | 1,000 | 5,000 | 1,000 | 5,000 | 1,000 | 5,000 | 1,000 | 5,000 | 1,000 | 1,000 | 5,000 | 1,000 | 5,000 | 43,000 |
| Debtor Legal | 75,000 | 75,000 | 75,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 25,000 | 25,000 | 25,000 | | | | 600,000 |
| Lender Legal | | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 350,000 |
| Committee Legal | - | | | - | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | | 40,000 |
| Claims Agent | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | | 60,000 |
| Other Legal | 5,000 | 5,000 | 5,000 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 45,000 |
| US Trustee Fees | | | | | | | | 9,750 | | | | | | | | 9,750 |
| Bank + Transfer Fees | | | | 1,000 | | | | 1,000 | | | | 1,000 | | | | 3,000 |
| Payroll | 10,304 | 199,085 | - | 156,829 | - | 173,000 | - | 143,700 | - | 5,360 | 143,700 | - | 143,700 | 5,360 | 143,700 | 1,124,740 |
| **Total Overhead** | 108,004 | 325,285 | 120,200 | 345,216 | 97,700 | 276,700 | 97,700 | 274,355 | 97,700 | 84,060 | 216,400 | 91,905 | 185,400 | 45,060 | 185,400 | 2,551,087 |
| 9% DiP Interest | | | | | 3,814 | | | 10,150 | | | | | 14,945 | | 8,570 | 37,478 |
| 2% Closing Fee | 2,204 | 6,638 | 2,453 | 7,045 | 2,093 | 5,647 | 1,994 | 5,599 | 2,215 | 1,716 | 4,416 | 1,876 | 4,097 | 925 | 3,963 | 52,881 |
| 0.50% DIP Unused Line Fee | | | | | 1,038 | | | 686 | | | | | 419.74 | 250 | 231 | 2,625 |
| Net Cash | (110,208) | (331,924) | (122,653) | (352,261) | (104,645) | (282,347) | (99,694) | (279,954) | (110,751) | (85,776) | (220,817) | (93,781) | (204,862) | (46,235) | (198,164) | (2,644,072) |
| DIP Advances | 110,208 | 331,924 | 122,653 | 352,261 | 104,645 | 282,347 | 99,694 | 279,954 | 110,751 | 85,776 | 220,817 | 93,781 | 204,862 | 46,235 | 198,164 | 2,644,072 |
| Ending Cash | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Cum DIP | 110,208 | 442,132 | 564,785 | 917,046 | 1,021,691 | 1,304,038 | 1,403,732 | 1,683,686 | 1,794,437 | 1,880,213 | 2,101,029 | 2,194,810 | 2,399,672 | 2,445,907 | 2,644,072 | |
| Unused DiP | 2,889,792 | 2,557,868 | 2,435,215 | 2,082,954 | 1,978,309 | 1,695,962 | 1,596,268 | 1,316,314 | 1,205,563 | 1,119,787 | 898,971 | 805,190 | 600,328 | 554,093 | 355,928 | |

GZJ KOKV'4

## Blue Earth Inc. & Blue Earth Tech Inc., Cash Flow Budget

**Blue Earth Inc. and Blue Earth Tech Cash Flow Budget**

| | Week Begin | 3/21/2016 | 3/28/2016 | 4/4/2016 | 4/11/2016 | 4/18/2016 | 4/25/2016 | 5/2/2016 | 5/9/2016 | 5/16/2016 | 5/23/2016 | 5/30/2016 | 6/6/2016 | 6/13/2016 | 6/20/2016 | 6/27/2016 | Totals |
| | End | 3/25/2016 | 4/1/2016 | 4/8/2016 | 4/15/2016 | 4/22/2016 | 4/29/2016 | 5/6/2016 | 5/13/2016 | 5/20/2016 | 5/27/2016 | 6/3/2016 | 6/10/2016 | 6/17/2016 | 6/24/2016 | 7/1/2016 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Expected Receipts | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Overhead Disbursements** | | | | | | | | | | | | | | | | | |
| Building Rent | | | | | 15,084 | | | | 15,084 | | | | 15,084 | | | | 45,252 |
| Total Utilities | | 2,500 | 2,000 | - | 2,621 | - | 2,000 | - | 2,621 | - | 2,000 | - | 2,621 | - | 2,000 | - | 18,363 |
| Other Office | | 200 | 200 | 200 | 700 | 200 | 200 | 200 | 700 | 200 | 200 | 200 | 700 | 200 | 200 | 200 | 4,500 |
| Insurance | | | | | 72,482 | | | | | | | | | | | | 72,482 |
| Travel | | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 135,000 |
| Licenses | | | | | | | | | | | | | | | | | - |
| Consultants | | 1,000 | 5,000 | 1,000 | 5,000 | 1,000 | 5,000 | 1,000 | 5,000 | 1,000 | 5,000 | 1,000 | 1,000 | 5,000 | 1,000 | 5,000 | 43,000 |
| Debtor Legal | | 75,000 | 75,000 | 75,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 25,000 | 25,000 | 25,000 | | | | 600,000 |
| Lender Legal | | | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 350,000 |
| Committee Legal | | - | | - | - | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | | 40,000 |
| Claims Agent | | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | | | 60,000 |
| Other Legal | | 5,000 | 5,000 | 5,000 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 45,000 |
| US Trustee Fees | | | | | | | | | 9,750 | | | | | | | | 9,750 |
| Bank + Transfer Fees | | | | | 1,000 | | | | 1,000 | | | | 1,000 | | | | 3,000 |
| Payroll | | 10,304 | 199,085 | - | 156,829 | - | 173,000 | - | 143,700 | - | 5,360 | 143,700 | - | 143,700 | 5,360 | 143,700 | 1,124,740 |
| Total Overhead | | 108,004 | 325,285 | 120,200 | 345,216 | 97,700 | 276,700 | 97,700 | 274,355 | 97,700 | 84,060 | 216,400 | 91,905 | 185,400 | 45,060 | 185,400 | 2,551,087 |
| 9% DiP Interest | | | | | | 3,814 | | | 10,150 | | | | | 14,945 | | 8,570 | 37,478 |
| 2% Closing Fee | | 2,204 | 6,638 | 2,453 | 7,045 | 2,093 | 5,647 | 1,994 | 5,599 | 2,215 | 1,716 | 4,416 | 1,876 | 4,097 | 925 | 3,963 | 52,881 |
| 0.50% DIP Unused Line Fee | | | | | | 1,038 | | | | 686 | | | | 419.74 | 250 | 231 | 2,625 |
| Net Cash | | (110,208) | (331,924) | (122,653) | (352,261) | (104,645) | (282,347) | (99,694) | (279,954) | (110,751) | (85,776) | (220,817) | (93,781) | (204,862) | (46,235) | (198,164) | (2,644,072) |
| DIP Advances | | 110,208 | 331,924 | 122,653 | 352,261 | 104,645 | 282,347 | 99,694 | 279,954 | 110,751 | 85,776 | 220,817 | 93,781 | 204,862 | 46,235 | 198,164 | 2,644,072 |
| Ending Cash | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Cum DIP | | 110,208 | 442,132 | 564,785 | 917,046 | 1,021,691 | 1,304,038 | 1,403,732 | 1,683,686 | 1,794,437 | 1,880,213 | 2,101,029 | 2,194,810 | 2,399,672 | 2,445,907 | 2,644,072 | |
| Unused DiP | | 2,889,792 | 2,557,868 | 2,435,215 | 2,082,954 | 1,978,309 | 1,695,962 | 1,596,268 | 1,316,314 | 1,205,563 | 1,119,787 | 898,971 | 805,190 | 600,328 | 554,093 | 355,928 | |