Entered on Docket
April 21, 2017
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: April 20, 2017



_____
**DENNIS MONTALI**
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>BLUE EARTH, INC.,<br><br>                Debtor.<br>_____ | ) Bankruptcy Case<br>) No. 16-30296 DM<br>)<br>) Chapter 11<br>)<br>)<br>) |

**MEMORANDUM DECISION REGARDING DEBTOR'S OBJECTION TO CLAIM NO. 105 FILED BY ROBERT C. FLOREK AND ASSIGNED TO TERESA JEAN MOORE**

I.  <u>INTRODUCTION</u>

At a hearing on April 7, 2017, the court took under advisement the objection of Blue Earth, Inc. ("Debtor") to proof of claim number 105 ("Claim No. 105") filed by Robert C. Florek ("Florek") and assigned to Teresa J. Moore ("Moore"). For the reasons set forth below, the court will sustain the objection.

II. <u>DISCUSSION</u>[1]

On August 1, 2016, Robert C. Florek ("Florek") filed a proof of claim ("Claim No. 105") in the amount of $997,123.88. In response to Question 8 on the claim form ("What is the basis of the claim?"), Florek responded: "Millennium Power Solutions (MPS)

---

[1]The relevant facts upon which the court reaches its conclusions are not in dispute.

-1-

Founding Subscriber." (Dkt. No. 330 at pg. 34). In particular, as Florek stated in subsequent filings with the court, his claim arose from a purchase for $100,000 of 533,333 shares of Millennium Power Solutions, LLC Class B Units, estimated to be a 5% ownership interest in Millennium Power Solutions, LLC ("MPS"). (Dkt. No. 362 at pg. 2). He purchased the units pursuant to a subscription agreement ("Subscription Agreement") dated May 1, 2012. *(Id.;* Dkt. No. 363 at pg. 14).

On October 26, 2016, Blue Earth, Inc. ("Debtor") filed a Fifth Omnibus Claim Objection (No Liability Claims) that included an objection to Claim No. 105. (Dkt. No. 330). Florek filed an opposition and declaration on December 2, 2016. (Dkt. Nos. 362 and 363).

On December 6, 2016, Florek executed a "Transfer of Claim Other Than For Security" assigning his claim to Teresa J. Moore ("Moore"). (Dkt. No. 429, Exh. 1). Three days later, Florek and Moore executed a "Evidence of Transfer of Claim." (Dkt. No. 432 at p. 17). For purposes of this memorandum decision only, the court will treat the transfer of Claim No. 105 to Moore as timely and valid, without reaching the issue of whether the assignment was time-barred pursuant to terms of the Debtor's confirmed plan of reorganization.

On February 17, 2017, Debtor filed an omnibus reply (Dkt. No. 402) that included a response to Florek's opposition. Debtor noted that Claim No. 105 was based on the purchase of stock in another entity (MPS) and that Debtor was not a party to the relevant Subscription Agreement. Debtor also observed that even if it had been a party to the Subscription Agreement, the claim

sought damages arising from the purchase of stock and thus would be subordinated to general unsecured creditors under 11 U.S.C. § 510(b).

The court held a hearing on the claim objection on February 24, 2017. Moore appeared and stated that she was the assignee of the claim. The court continued the hearing to April 7, 2017, and directed Moore to file a statement regarding the claim assignment and her standing as an assignee. Moore did so on March 30, 2017 (Dkt. No. 428).

At the April 7 hearing, the court heard arguments regarding Claim No. 105 and took the matter under submission. On April 10, 2017, Moore filed a motion to allow the assignment of Claim No. 105, to allow discovery and to allow opposition to the objection. (Dkt. No. 432). Moore contended that she thought that the court would limit the April 7 hearing to issues regarding the "distribution record date" and the assignment of the claim to her, even though the claim objection and reply clearly focused on two grounds: (1) Florek purchased stock from an entity other than Debtor and thus Debtor is not liable for damages arising from the purchase of that stock, and (2) even if Debtor had been a party to the underlying Subscription Agreement, any claims for damages arising from the purchase of stock are subordinated to those of general unsecured creditors pursuant to section 510(b).

While the court sympathizes with Moore's family difficulties, it is denying her request for further time to respond as any such response is unnecessary and would be futile. As a matter of law and undisputed fact, the claim is not allowable.

First, the transaction upon which Florek bases his claim did

-3-

not involve Debtor.  In 2012, Florek entered into a stock Subscription Agreement with MPS for the purchase of five percent ownership in MPS.  *See* Declaration of Florek at Dkt. No. 363, paragraphs 4, 9, 10 and Exhibits 3 and 4.  His own opposition concedes that his claim is based on "his 5% ownership interest in the MPS by acquisition" and contends that the assets of MPS (subsequently acquired in 2013 by Debtor's wholly-owned subsidiary) secure that 5% interest.  *See* Florek's Opposition at Dkt. No. 362 at 2:14-18.  Thus the liability he asserts against Debtor arises from his acquisition of an equity interest from MPS, not Debtor.

More importantly, even if Debtor had been a party to the underlying subscription agreement, Florek's claim would be subordinated to those of general unsecured creditors and thus entitled to no distribution under the confirmed plan.  Section 510(b) provides:

> (b) For the purpose of distribution under this title, *a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security,* or for reimbursement or contribution allowed under section 502 on account of such a claim, *shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security*, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b) (emphasis added).

As the Ninth Circuit has recognized, section 510(b) "serves to effectuate one of the general principles of corporate and bankruptcy law: that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets." *In re American Wagering, Inc.*, 493 F.3d 1067, 1071-72 (9th Cir. 2007).

-4-

> The principles behind corporate and bankruptcy laws generally do not favor shifting the risk of loss from shareholders to creditors, even if the shareholders are blameless. One of the primary purposes of section 510(b), therefore, is to prevent disappointed shareholders, sometimes the victims of corporate fraud, from recouping their investment in parity with unsecured creditors.

*Id.* This principle applies even when the claimant held stock in a company acquired by the debtor. or even when the claimant has declined to accept shares in a third company that had been tendered to them by debtor following a failed merger. As the Ninth Circuit recently held in *In re Del Biaggio*, 834 F.3d 1003 (9th Cir. 2006), a claim for amounts paid for a membership interest in a limited liability company affiliated with the debtor was a claim for damages "arising from" the purchase or sale of securities and was thus subject to subordination under section 510(b).

Likewise, in *In re Betacom of Phoenix, Inc.*, 240 F.3d 823 (9th Cir. 2001), the claimants held shares in a corporation that entered into a merger agreement with the debtor. The agreement called for the claimants to receive stock of the surviving company in exchange for their shares in the acquired company. The merger agreement never closed and claimants never accepted their tendered shares, which remained in escrow. The Ninth Circuit held that even though the claimants never accepted the tendered share resulting from the merger, their claim should be subordinated under section 510(b).

In another similar case, *In re Tristar Esperanza Props., LLC*, 488 B.R. 394 (9th Cir. BAP 2013), the bankruptcy appellate panel held that section 510(b) subordinates "three types of claims —

Case: 16-30296    Doc# 437    Filed: 04/20/17    Entered: 04/21/17 08:37:50    Page 5 of 7

rescission, damages, and reimbursement/contribution — that all have a nexus with the purchase or sale of a security." Here, Florek's claim for damages has a nexus with his purchase of a security. The claim is thus subordinated under section 510(b) as a matter of law. Further briefing or discovery by Moore will not change this result.

III. CONCLUSION

For the foregoing reasons, the court will sustain the objection to Florek's claim and deny Moore's request for further time to respond. Counsel for Debtor should upload an order accordingly, and state that the objection is sustained "for the reasons stated in the memorandum decision entered on [date]" Counsel should also file (on the docket, not appended to the order) a proof of service in accordance with B.L.R. 9021-1(c).

*** END OF MEMORANDUM DECISION ***

**Court Service List**

Teresa J. Moore
Post Office Box 748
Mountain View, CA 94042